JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Jessy Wilson ("Wilson"), appeals his convictions. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2004, Wilson was charged with three counts of aggravated robbery, two counts of aggravated burglary, five counts of kidnapping, and one count of felonious assault. Each of these counts contained one- and three-year firearm specifications, a repeat violent offender specification, and a notice of prior conviction. Wilson was also charged with two counts of impersonating a police officer.
 {¶ 3} Prior to trial, Wilson moved to suppress all photo identifications that witnesses may have made. He claimed that the photo arrays were suggestive and, thus, the identifications were unreliable. Following a hearing, the trial court denied the motion.
 {¶ 4} The matter proceeded before a jury, where the following evidence was presented.
 {¶ 5} On September 15, 2004, Vincent Frame ("Vincent") arrived at his home and was confronted by two men running toward him. Vincent identified Wilson as the man with the gun. Vincent was ordered to lie on the floor and was handcuffed. His wife, Michelle Frame ("Michelle"), was also ordered to lie on the floor. She also identified Wilson as the man with the gun. Vincent testified that he initially believed that the men were police officers because they carried a gun and they wore blue shirts with yellow lettering, Cleveland police hats, gloves, and badges. However, he realized that they were not Cleveland police when he saw the word "Security" on the back of their shirts, and saw that the badges were not Cleveland-issued.
 {¶ 6} The men demanded that Vincent reveal where the drugs were. They ransacked the house, demanding to know where the drugs were hidden. Vincent repeatedly denied having any drugs.
 {¶ 7} When the men found no drugs, they ordered Vincent to take them to his drug supplier. Although he had no supplier, Vincent drove them around to "buy time." Wilson was seated in the front passenger seat with the gun in his lap, and the accomplice was in the back seat. Vincent testified that he stopped at three houses to seek help while pretending to look for drugs. However, there was no answer at any of the houses.
 {¶ 8} Vincent then drove back to his house, where his mother-in-law was waiting in the driveway. Wilson ordered Vincent to drop them off around the corner. He then gave Vincent a phone number with instructions to call him so that he could return for the drugs. Wilson told Vincent his name was "Fred." After the men left, Vincent returned home and called the police.
 {¶ 9} On September 17, 2004, Jerome Emery ("Jerome") was entering his car when another vehicle approached him. Three men exited the vehicle and stood beside Jerome's car. Jerome testified that he believed the men were vice cops because they were wearing badges, vests, and carried guns. The men tapped on his window with a gun and ordered him to unlock the door. One man pulled Jerome out of the car and took his jacket, watch, chain, and money. Jerome identified the man as Wilson. Jerome was then pushed into the back seat. Wilson pointed the gun at Jerome's head and placed his knee on Jerome's back. According to Jerome, Wilson demanded to know where the drugs and money were and threatened to kill him. When Jerome responded that he did not know, Wilson took the keys from the ignition and left Jerome in the car.
 {¶ 10} Jerome testified that he saw the men cross the street and kick in the door of a house. The man who waited in the car pulled Jerome out of the car and forced him at gunpoint into the house.
 {¶ 11} Jamasetta Johnson ("Jamasetta") lived in the house with her son, Willie Givens ("Willie"). Jamasetta testified that, when she heard a knock at the door, she was hesitant to open it. When she saw the men, she tried to lock the door, but the men kicked in the door, grabbed her, and dragged her to a bedroom. The men then dragged Willie from the bedroom and began slapping him, demanding to know where the drugs and money were. Wilson also struck Jerome with a gun and asked him where the drugs were.
 {¶ 12} Jamasetta escaped through the bedroom window when the men took her son outside. Both Jamasetta and Jerome testified that they heard gunshots. When Jerome left the house, he observed the men drive away.
 {¶ 13} The evidence showed that the phone number that Wilson gave Vincent belonged to a cell phone owned by Kelly Brown. Wilson was ultimately arrested at Brown's house.
 {¶ 14} The jury found Wilson guilty of all charges, including the firearm specifications. The State dismissed the repeat violent offender specifications and Wilson stipulated to the notice of prior convictions contained in the indictment. He received a total sentence of twenty-one years in prison.
 {¶ 15} Wilson appeals his convictions, raising two assignments of error.
 Photo Array {¶ 16} In his first assignment of error, Wilson argues that the trial court erred when it denied his motion to strike Michelle Frame's testimony because the State failed to disclose, before trial, that she made an out-of-court identification of him from a photo array. He claims that the court should have stricken her testimony because the State violated Crim.R. 16 discovery, and this violation denied him his right to due process.
 {¶ 17} Michelle Frame testified at trial and identified Wilson as the man who ransacked her home on September 15. During cross-examination, Wilson questioned Michelle as to whether she had made any prior photo identifications of Wilson. It was then that Wilson learned that Michelle had made two previous out-of-court photo array identifications of him. The first identification occurred on the day the court considered Wilson's motion to suppress. Although Michelle did not testify at the suppression hearing, she positively identified Wilson in a photo array. The second identification occurred in her home two to three weeks prior to trial. Again, she positively identified Wilson in a photo array as the man who ransacked her home on September 15.
 {¶ 18} Wilson argued at trial that the State's failure to disclose these out-of-court identifications violated Crim.R. 16 discovery rules. Michelle's out-of-court identifications did not generate any written statement or document which the State would be required to disclose pursuant to Crim.R. 16(B)(1)(c). However, pursuant to Crim.R. 16(B)(1)(f), the State is required to disclose all evidence favorable to the defendant and material either to guilt or punishment. We find that Michelle's out-of-court identification was neither favorable to Wilson nor material to his guilt.
 {¶ 19} Michelle testified that she positively identified Wilson in both out-of-court identifications as the man who ransacked her home on September 15. Therefore, the identifications were not favorable to Wilson.
 {¶ 20} Moreover, we cannot say that the out-of-court identifications were material to his guilt or punishment. The State did not present her out-of-court identifications at trial to prove Wilson's guilt. Rather, Michelle made a positive in-court identification. Moreover, her in-court identification was cumulative to Vincent's and Jerome's in-court identifications and testimony. Therefore, we cannot say that the out-of-court identifications were material to Wilson's guilt or punishment.
 {¶ 21} Even if we found a violation of the discovery rules, we cannot say that the trial court abused its discretion in denying Wilson's motion to strike her testimony. A trial court has discretion in permitting witness testimony. State v.Wheeler (May 25, 1995), Cuyahoga App. No. 66923, citing Statev. DeLeon (1991), 76 Ohio App.3d 68, 78. When a discovery violation occurs, a trial court has discretion in its selection of the appropriate sanction. For a failure to comply with the discovery rules, the court may order a party to permit discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or any other order that it deems necessary under the circumstances. Crim.R. 16(E)(3). When deciding whether the trial court abused its discretion, an appellate court should consider whether there was a willful violation of the discovery rules, if foreknowledge would have benefitted the accused in the preparation of his or her defense, and whether the accused was unfairly prejudiced.State v. Parson (1983), 6 Ohio St.3d 442, 453 N.E.2d 689, syllabus.
 {¶ 22} As previously discussed, the out-of-court identifications were not favorable to Wilson; thus, prior knowledge of the identifications would not have benefitted Wilson in the preparation of his defense. We also find that the State's withholding of this information was not willful because Michelle did not make her first identification until the day of the motion to suppress hearing. Finally, Wilson was not unfairly prejudiced by the out-of-court identifications because Michelle positively identified Wilson at trial. Moreover, her in-court identification was cumulative to Vincent's and Jerome's in-court identifications. Therefore, the trial court acted within its discretion in denying the motion to strike.
 {¶ 23} Wilson also argues that his due process rights were violated by the withholding of Michelle's photo identifications because he was unable to question the reliability and suggestiveness of the identifications at the suppression hearing.
 {¶ 24} We note that Michelle did not make an out-of-court identification prior to the hearing on Wilson's motion to suppress. She made the identification outside the courtroom while her husband testified at the motion to suppress hearing. After learning that Michelle made the two prior identifications, Wilson could have requested permission from the court to question Michelle at that time regarding the reliability and suggestiveness of the photo identifications. Moreover, Michelle was included on the State's witness list; thus, Wilson had notice that Michelle would likely be testifying.
 {¶ 25} Moreover, Wilson has failed to demonstrate how he was prejudiced by Michelle's testimony regarding her out-of-court identification and her in-court identification of him. Vincent and Jerome also made positive in-court identifications, thus making Michelle's identification cumulative.
 {¶ 26} Therefore, we find that the trial court did not abuse its discretion in denying Wilson's motion to strike the testimony of Michelle Frame.
 {¶ 27} Accordingly, the first assignment of error is overruled.
 Severance of Counts {¶ 28} In his second assignment of error, Wilson argues that the court erred when it denied his motion to sever counts 1 through 5 from counts 6 through 13.
 {¶ 29} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, "the law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Lott, (1990) 51 Ohio St.3d 160, 163,555 N.E.2d 293, citing State v. Torres (1981), 66 Ohio St.2d 340,343, 421 N.E.2d 1288.
 {¶ 30} A defendant requesting severance has the "burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." Torres, supra. A defendant claiming error in the denial of severance must affirmatively show that his rights were prejudiced, and that the trial court abused its discretion in refusing separate trials. Id. We find that the trial court did not abuse its discretion in denying the motion to sever, nor was Wilson prejudiced by the joinder.
 {¶ 31} In Wilson's motion to sever, he argued that "these alleged crimes occurred on different dates and are unconnected to one another." In his brief in support, Wilson contended that the joinder of both crimes was an attempt to circumvent "Rule 404(b) of the Ohio Rules of Criminal Procedure" and that the two offenses were not part of a common scheme or plan, or part of a course of criminal conduct necessitating a joinder of offenses.[1]
 {¶ 32} We do not believe that these general assertions provided the trial court with sufficient information to allow it to weigh the considerations favoring joinder against the right to a fair trial. Furthermore, Wilson's appellate brief fails to affirmatively demonstrate how the trial court abused its discretion in refusing to separate the charges for trial. "When simple and direct evidence [of each crime] exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as `other acts' under Evid.R. 404(B)."Lott, supra at 163. From our review of the record, we conclude that there was simple and direct evidence supporting each of the thirteen counts. The incidents occurred just two days apart, in the same neighborhood, and were of a similar character. The evidence of Wilson's guilt is "amply sufficient to sustain each verdict, whether or not the indictments were tried together."Torres, supra at 344. The State did not need the evidence of one case to prove the other. Therefore, we cannot say that Wilson was prejudiced by the court's denying his motion to sever.
 {¶ 33} The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J. and Kilbane, J., Concur.
[1] "Rule 404(b)" is actually contained in the Rules of Evidence.