JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Timothy West (West) appeals the decision of the trial court. For the following reasons, we affirm.
 {¶ 2} On July 22, 2005, a Cuyahoga County Grand Jury indicted West on two counts of aggravated arson. On June 29, 2006, West waived his speedy trial right.
 {¶ 3} On November 1, 2006, the case proceeded to a jury trial. On November 8, 2006, a jury found West guilty of two counts of arson, the lesser included offense of aggravated arson.
 {¶ 4} On December 18, 2006, the trial court sentenced West as follows: six months of imprisonment for the first count of arson and three years of community control sanctions for the second count of arson.
 {¶ 5} The facts giving rise to the instant case occurred on March 18, 2003, at 5106 Fleet Avenue, Cleveland, Ohio. Todd West (Todd) leased the property at 5106 Fleet Avenue and operated a pizza business named Anthony's Pizza therein. West also maintained his business at 5106 Fleet Avenue. West stored heating and cooling equipment for his business there and leased the upstairs residential units to Dennis Dvorak (Dvorak) and others. West and Todd employed Dvorak and Phillip Lowe (Lowe).
 {¶ 6} As part of a community development project, the property at 5106 Fleet Avenue was to be sold by the owner to the Slavic Village Development Corporation. However, Todd retained an "option to buy" in their lease and filed a civil action to *Page 4 
enforce the clause. As part of his settlement with the Slavic Village Development Corporation, Todd agreed to renovate the property within a specific time frame and thereafter purchase the property. The settlement further stipulated that if Todd failed to renovate, that the Slavic Village Development Corporation would retain the right to purchase the property. During this time, Dvorak resided in a residential unit on the second floor. West filed an eviction action against him, although the caption was later changed to name Todd as the lessor.
 {¶ 7} Todd failed to renovate the property, and the Slavic Village Development Corporation purchased the property and instructed Todd and remaining occupants to vacate the premises. On or around March 8, 2003, West, Todd, Dvorak, Lowe, and several pizza deliverymen from Anthony's Pizza moved all major items from 5106 Fleet Avenue into storage, including: heating and cooling systems, gas lines, and refrigerators.
 {¶ 8} While there, Dvorak and Lowe noticed that members of the group painted graffiti on the walls and knocked holes in other areas of wall space. West and Todd created a seven-foot pile of debris around the wooden main support column on the first floor that resembled a bonfire. West stated that he was going to burn the place down.
 {¶ 9} West paid Lowe $50 to burn down the property. On March 18, 2003, Lowe lit the pile of debris on the first floor of 5106 Fleet Avenue and walked out. The entire structure burned down. *Page 5 
 {¶ 10} On January 3, 2007, West filed a notice of appeal with six assignments of error for our review.
FIRST ASSIGNMENT OF ERROR "The trial court erred by allowing testimony which infringed upon the appellant's Sixth Amendment right to counsel and Fifth Amendment right against self-incrimination."
 {¶ 11} West argues that the trial court erred by admitting certain testimony from Detective Raymond McCarthy (McCarthy) that made reference to West's prearrest silence.
 {¶ 12} The prosecution is not permitted to comment on an accused's exercise of his or her privilege not to testify. Griffin v.California (1965), 380 U.S. 609, 85 S.Ct. 1229. Nor is the prosecution permitted to infer guilt from said silence. State v. Stephens (1970), 24 Ohio St.2d 76, 263 N.E.2d 773.
 {¶ 13} Appellate courts apply the harmless error test. State v.McMillion, 11th Dist. No. 2005-A-0016, 2006-Ohio-3229. "To determine whether a prosecutor's conduct was harmless, we shall consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting appellant's guilt." Id. at paragraph 27; State v. Sybert
(1998), 6th Dist. No. L-96-337, 1998 Ohio App. LEXIS 2681.
 {¶ 14} Specifically, West argues that the following testimony elicited by the State from McCarthy should not have been admitted: *Page 6 
 "Q Were you allowed to speak to Tim West with regard to those offenses?
 A No.
 Q And you were not permitted to speak to him, is that correct?
 A After I spoke to Mr. Stolarsky, he just told me that, you know, his client wasn't talking so I didn't attempt to even inquire about that.
 Q You started to talk about other fire investigations that you've done. Have you run into that kind of roadblock in the past?
 A No, I haven't.
 Q So this is the first time you've been restricted from speaking to a-
 A Yes." (Tr. 507-508.)
 {¶ 15} However, the testimony to which West objects was elicited by the State on redirect examination of McCarthy only after defense counsel cross-examined McCarthy and only after defense counsel raised West's prearrest silence first, as follows:
 "Q So your first real break in this case was a Crime Stoppers phone call at that time, am I correct?
 A Yeah. I mean I think the fact that the Wests wouldn't cooperate and give a statement, I kind of — that throws up red flags to us. Those are all indicators as they like to call them.
 Q Mr. Stolarsky is available, he could talk about that.
 A That's fine. *Page 7 
 Q It's not unusual that somebody has an attorney, right?
 A No.
 Q And you were aware of the litigation history between the owner of the building and the Wests, right?
 A I was.
 Q Okay. So you talked to Mr. Stolarsky, he talked to you, and it was really regarding his representation of the Wests, right? You were clear on that, he represented the Wests?
 A He told me — he contacted me and I told him that I wanted to
 Q That's not unusual? A Well — 
 Q You knew there was a litigation history between the ownership? A I did but what I found unusual was the lack of cooperation. I've had plenty of people I've interviewed with an attorney they say don't answer that, don't answer that, don't talk about that. I think this is — 
 Q But Mr. Stolarky could have explained why he made that decision on behalf of the Wests, couldn't he? That was — 
 A I can't.
 Q It wasn't West said he wouldn't talk to you, it was Mr. Stolarsky, right? It was their attorney said that?
 A Correct. *Page 8 
 Q So neither Todd West or Tim West said they couldn't talk to you. It was the attorney that told you that his advice was that they weren't to talk to you?
 A That's correct.
 Q That's not unusual?
 A It is unusual.
 Q Well, I disagree with you there, but obviously I'm not a witness in the case." (Tr. 488-89.)
 {¶ 16} The Ohio Supreme Court held:
 "Allowing the use of pre-arrest silence, evidenced by the pre-arrest invocation of the right to counsel, as substantive evidence of guilt in the state's case-in-chief undermines the very protections the Fifth Amendment was designed to provide." State v. Leach (2004), 102 Ohio St.3d 135.
 {¶ 17} However, the Leach court also distinguished the use of prearrest silence for impeachment purposes and held:
 "When a defendant testifies at trial, the defendant has cast aside his cloak of silence. Thus, use of pre-arrest silence as impeachment evidence is permitted because it furthers the truth-seeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record. But using a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime and impairs the sense of fair play underlying the privilege." Leach, at paragraph 33. (Internal citations omitted.)
 {¶ 18} Additionally, the United States Supreme Court held:
 "The Fifth Amendment, as applied to the States through the Fourteenth Amendment, is not violated by the use of prearrest *Page 9 silence to impeach a criminal defendant's credibility." Jenkins v. Anderson (1980), 447 U.S. 231, at paragraph one of the syllabus.
 {¶ 19} We find that McCarthy's testimony was not used to impeach because it was introduced before West testified. See State v.Bajaj, 7th Dist. No. 03 CO 16, 2005-Ohio-2931. The challenged portion of McCarthy's testimony was presented as rebuttal, after defense raised the prearrest silence issue with McCarthy.
 {¶ 20} Regarding McCarthy's testimony as direct evidence, the State did not use this testimony as substantive evidence of West's guilt. The defense invited this questioning by eliciting the testimony from McCarthy.
 {¶ 21} Thus, in applying the law to the facts of this case, we find that the comments were not extensive, that inference of guilt was not stressed to the jury, and pursuant to the remainder of this opinion, there exists extensive other evidence of West's guilt. Therefore, the State's question was harmless error.
 {¶ 22} West's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR "The trial court erred by allowing a state investigator to vouch for the credibility of a key state witness."
 {¶ 23} West argues that the trial court erred when it admitted McCarthy's testimony stating that the testimony by Lowe was consistent with his written statement. We disagree.
 {¶ 24} The challenged testimony reads as follows: *Page 10 
 "Q The statement that he [Lowe] provided, was it consistent with his testimony here on Friday?
 A Yes." (Tr. 465.)
 {¶ 25} "The opinion of a witness as to whether another witness is being truthful is inadmissible." State v. Huff, 1st Dist. No. C-000504, 145 Ohio App.3d 555; see
 {¶ 26} State v. Boston (1989), 46 Ohio St.3d 108. It is the factfinder and not the witness who assesses the credibility and veracity of witnesses. Huff at 561.
 {¶ 27} The instant case, however, is distinguishable from Huff.Huff involved examining a police officer regarding the following: the felony records, if any, of the victims; whether there was misidentification of the shooter; the victims' description of the shooter's clothing; and the overall credibility of the victims. The testimony at issue in Huff was crucial because the case rested almost solely on the identification by the victims of the shooter.
 {¶ 28} Here, the challenged testimony consisted of one question to McCarthy, Was Lowe's statement consistent with his testimony? To which he replied, "Yes." Additionally, the State does not rest its case solely on the testimony at issue.
 {¶ 29} Lowe also admitted that he started the fire that burned down the structure at 5106 Fleet Avenue. Lowe's testimony was corroborated by Dvorak when Dvorak testified that West paid Lowe $50 to burn down the structure at 5106 Fleet Avenue. Furthermore, McCarthy was subject to cross-examination. Thus, we *Page 11 
find this terse line of questioning regarding vouching, although improper, harmless beyond a reasonable doubt.
 {¶ 30} West's second assignment of error is overruled. THIRD ASSIGNMENT OF ERROR
 "The trial court erred by allowing `other acts' evidence to be admitted in contravention of Ohio rule of Evidence 404(B)."
 {¶ 31} West argues that the trial court erred when it admitted Dvorak's testimony regarding a physical altercation between West and Dvorak in contravention of Evid.R. 404(B). We disagree.
 {¶ 32} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, at paragraph two of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 33} Evid.R. 404 states:
 "(A) Character evidence generally.
 Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of the accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; * * *. *Page 12 
 * * *
 (B) Other crimes, wrongs or acts.
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 34} The challenged testimony reads as follows:
 "A Yeah, I was pretty upset about all the lies and deceit and the fact that, you know, that he would be like that.
 Q When you said your business relationship or your working relationship with Mr. West ended, you said 40 days after — 
 A Yes.
 Q — that concert, why 40 days? Why does that stand out in your mind?
 A Because on December 30th of that year, Mr. West said that I was giving him an ultimatum, which all I was trying to do was close our business relationship and collect back owed money that he owed me for jobs that he had not got paid for and he had titles to trucks that I had paid for and he had never given me. And I was trying to conclude that business, but on that day that he came with my son and he assaulted me, he tried to — he put me in a hospital is what he did.
 Q Okay. This was over some money that you thought Mr. Tim West owed you?
 A Yeah, they were for jobs that I had done that he had collected the money for. *Page 13 
 * * *
 Q Did you threaten him with something or what was — you said there was an ultimatum?
 A He said — he gave me an ultimatum, he had pushed me down in the snow. He tried to hit me with an 18-inch piece of three-quarter gas line with a union on the end, but my son had grabbed it from him. He ended up kicking me several times, punching me in the head and the face and my neighbors witnessed it. The one neighbor next door called the police and my landlord." (Tr. 234-236.)
 {¶ 35} Specifically, West argues that the relevancy of the testimony regarding a physical altercation with Dvorak is far outweighed by unfair prejudice.
 {¶ 36} However, according to Crim.R. 52(A), "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
 "In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. A reviewing court may overlook an error where the admissible evidence comprises `overwhelming' proof of a defendant's guilt. `Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.'" State v. Atkins-Boozer, Cuyahoga App. No. 84151, 2005-Ohio-2666. (Internal citations omitted.)
 {¶ 37} In the case sub judice, there is overwhelming proof of West's guilt, notwithstanding Dvorak's inadmissible testimony regarding his physical altercation with West. Lowe testified that West paid him $50 to set fire to the structure at 5106 Fleet Avenue, which was corroborated by Dvorak. The structure at 5106 Fleet Avenue burned down on March 18, 2003. *Page 14 
 {¶ 38} West's third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR "The appellant denied the effective assistance of trial counsel by the failure of defense counsel to request limiting instructions, thus allowing the jury to consider non-substantive evidence as direct evidence of guilt."
 {¶ 39} West argues that his counsel was ineffective for two reasons: first, for failing to request a jury instruction regarding testimony of West's silence; and second, for failing to request a limiting jury instruction as to the "other acts" evidence of the physical altercation between West and Dvorak.
 {¶ 40} In order to prevail on an ineffective assistance of counsel claim, West must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced defendant, depriving him of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052.
 "Counsel's performance may be found to be deficient if counsel `made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.' To establish prejudice, `the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" State v. Guyton, Cuyahoga App. No. 88423, 2007-Ohio-2513. (Citations omitted.)
 {¶ 41} However, we must give a strong presumption in favor of counsel's effective representation; specifically, whether or not counsel's representation "falls within the wide range of reasonable professional assistance." Strickland, syllabus at 2(a). *Page 15 
 {¶ 42} Regarding a jury instruction on testimony of West's prearrest silence, even if we found that defense counsel's performance was deficient for failing to request a jury instruction, we cannot find that the result of trial would have been different. We find the same regarding an instruction on "other acts."
 {¶ 43} West's fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR "The prosecution failed to provide the appellant with discovery required by Brady v. Maryland (1963), 373 U.S. 83 prior to the commencement of trial."
 {¶ 44} West argues that the State failed to provide him with exculpatory evidence prior to trial as required by Brady v.Maryland (1963), 373 U.S. 83. We disagree.
 {¶ 45} We review admission of a witness's testimony upon an abuse of discretion standard. State v. Wheeler (Feb. 7, 2001), Cuyahoga App. No. 66923. "When deciding whether the trial court abused its discretion, an appellate court should consider whether there was a willful violation of the discovery rules, if foreknowledge would have benefitted the accused in the preparation of his or her defense, and whether the accused was unfairly prejudiced." State v. Wilson, Cuyahoga App. No. 87429,2006-Ohio-5253. (Citations omitted.)
 {¶ 46} Furthermore, Crim.R. 16(B)(1)(f) reads as follows:
 "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the *Page 16 prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection."
 {¶ 47} On August 19, 2005, West filed a motion for discovery and inspection. On November 16, 2005, the State filed its response to request for discovery under Crim.R. 16. During trial, however, fire inspector, Victor Gill ("Gill"), testified that four suspects were detained and released in relation to the arson at 5106 Fleet Avenue. (Tr. 115-116.) Gill testified that he released them because he didn't feel that they had any involvement in the fire. (Tr. 115.) West objected to the testimony, arguing that he never knew of the four suspects because the State failed to include the information in its response to request for discovery.
 {¶ 48} The facts of this case are distinguishable from theBrady case because in Brady, the State withheld a statement from another person who admitted to committing the homicide at issue, evidence which was clearly favorable to Brady and material to his guilt or punishment.
 {¶ 49} A review of the testimony at issue in the instant case reveals that it is not favorable to West or material to his guilt or punishment. Nor can we find that the State willfully violated the discovery rules, that foreknowledge would have benefitted the accused in the preparation of his defense, or that the accused was unfairly prejudiced. Therefore, the trial court did not abuse its discretion in allowing Gill's testimony regarding four suspects. *Page 17 
 {¶ 50} West's fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR "The verdict was against the manifest weight of the evidence."
 {¶ 51} The Ohio Supreme Court set forth the following standard for evaluating a claim that the verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 52} The State charged West with two counts of the principal offense of aggravated arson, pursuant to R.C. 2909.02, and the jury found him guilty of arson pursuant to R.C. 2909.03(A)(1) and 2909.03(A)(4). R.C.2909.03(A)(1) reads as follows:
 "(A) No person, by means of fire or explosion, shall knowingly do any of the following: (1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent * * *."
R.C. 2909.03(A)(4) reads:
 "(A) No person, by means of fire or explosion, shall knowingly do any of the following: (4) Cause, or create a substantial risk of, physical harm, through the offer or the acceptance of an agreement for hire or other consideration, to any property of another without the other person's consent or to any property of the offender or another with purpose to defraud * * *." *Page 18 
 {¶ 53} In applying the law to the facts of this case, we find that West caused physical harm to the property of another without the other person's consent. Although West did not physically start the fire, we note that when an offender conspires to commit a crime, the offender may be charged with either conspiracy pursuant to R.C. 2909.03 or with the principal offense. State v. Coleman (1988), 37 Ohio St.3d 286.
 {¶ 54} On March 18, 2003, the Slavic Village Development Corporation owned the property at 5106 Fleet Avenue. The physical harm was caused by fire, as evidenced by photographs entered into evidence and also the eyewitness testimony of Paul Lydic. Pursuant to 2909.03(A)(4), the Slavic Village Development Corporation did not consent to the fire.
 {¶ 55} Additionally, West acted "knowingly" when he paid Lowe $50 to set fire to the structure at 5106 Fleet Avenue. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Whether a person acts knowingly can only be determined, absent a defendant's admission, from the surrounding facts and circumstances, including the doing of the act itself." Huff, 4th Dist. No. 06CA7, 2006-Ohio-5081. *Page 19 
 {¶ 56} Approximately ten days before the fire at 5106 Fleet Avenue, West helped to build a bonfire of debris around the main support, that included newspapers, phone books, Trading Times, papers, and books. (Tr. 221.) At that time, West told Dvorak that "they were going to burn the building down. Reason they said because I asked them what they were doing with all the stuff they were piling around the columns in the center of the pizza shop." (Tr. 221.)
 {¶ 57} Thereafter, West paid Lowe $50 to burn down the structure at 5106 Fleet Avenue. (Tr. 233, 365.) West complained to Dvorak about Lowe, after admitting that he paid Lowe $50 to set fire to the property, because Lowe complained that $50 was not enough. (Tr. 233.) Thus, in reviewing the surrounding facts and circumstances, we find that West acted knowingly when he committed arson.
 {¶ 58} Regarding West's second conviction for arson, West caused the physical harm through the offer of an agreement for hire, namely by paying Lowe $50 to burn down the structure at 5106 Fleet Avenue. (Tr. 233, 365.) Lowe testified that "[h]e [Tim] asked me — paid me to get rid of the building for him." (Tr. 363.) Lowe set fire to the structure at 5106 Fleet Avenue by lighting a match and setting fire to a pile of debris that West helped to construct approximately ten days prior. Lowe testified that:
 "A I went inside and there was stuff already stacked by the pillars, main structure. *Page 20 
 Q What kind of stuff?
 A Newspapers, boxes, and I just lit that and walked out."
 * * *
 Q How did you light the fire, sir?
 A One match.
 Q So did you bend down, did you just throw — 
 A Bent down and lit the match.
 Q Did you watch it catch?
 A It was instantly, there was so much paper and boxes piled there, it instantly started.
 Q How long did you stay to watch?
 A I didn't. I took — I left right away." (Tr. 366-368.)
 {¶ 59} Lowe also testified as follows:
 "A I said the job's done. Pretty good job.
 Q Did he [Tim] seem pleased with what you had done?
 A Yes, sir.
 Q And he gave you the money on the spot?
 A Yes, sir.
 * * *
 Q Did you see the structure burning?
 A When I left, yeah." (Tr. 372.) *Page 21 
 {¶ 60} Thus, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 61} West's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR. *Page 1