OPINION
{¶ 1} Defendant-appellant, Geoffrey Ferguson ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which convicted appellant of rape. We affirm the conviction.
 {¶ 2} The Franklin County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(1)(b). The indictment stated that the rape victim, D.W., was four years old during the incident, and the indictment alleged that the rape occurred *Page 2 
"from on or about March 21, 2006 to March 22, 2006." Appellant pleaded not guilty and exercised his right to a jury trial.
 {¶ 3} At the time of the trial, D.W. was almost six years old. The trial court held a hearing to determine whether D.W. was competent to testify. D.W. indicated that he is able to tell the truth, that it is important to tell the truth, and that lying is wrong. D.W. conveyed these answers by nodding his head to show affirmative responses to the trial court's questions. D.W. also claimed that he did not know what a lie was, and when asked why it is improper to lie, D.W. responded "because * * * [p]eople be taking you to college." (Tr. 50-51.)
 {¶ 4} D.W. initially said that his favorite cartoon character was real, but then said that the character was fake. He acknowledged that the people in the courtroom were real. He gave his name, age, and birthday. He said that he was in kindergarten, and he named his teacher and school.
 {¶ 5} D.W. also claimed that appellant raped him in the summer. The trial court asked D.W. if he was sure the incident did not occur in the winter, and D.W. reiterated that the incident took place in the summer. However, when the trial court asked D.W. where the rape occurred, D.W. stated "[i]n winter." (Tr. 52.) When the trial court repeated the question about where the rape occurred, D.W. said, "[h]ouse" and made a motion toward appellant. (Tr. 52.) The trial court interpreted this as D.W. indicating that the rape occurred at appellant's house. D.W. also said that another child, E.A., was present during the rape. *Page 3 
 {¶ 6} After the hearing, the trial court found D.W. competent to testify. The trial court recognized that D.W. knows that it is wrong to lie and that he is supposed to tell the truth. Appellant's counsel objected.
 {¶ 7} Next, plaintiff-appellee, the State of Ohio ("appellee"), called its witnesses to testify, including D.W.'s mother, Clarinda, who testified as follows. Clarinda and appellant became friends and planned to marry until Clarinda finally decided against the marriage. Appellant is not D.W.'s father, but he financially supported D.W. Appellant and D.W. maintained a "[f]ather and son" relationship, and D.W. visited appellant often. (Tr. 206.) Eventually, D.W. did not want to visit appellant anymore, and told Clarinda what appellant did to him. Thereafter, Clarinda contacted appellant and said, "when I catch you, I am going to kill you." (Tr. 211.)
 {¶ 8} Kerri Marshall also testified. Marshall is a social worker and medical forensic interviewer employed by the Child Assessment Center of the Center for Child and Family Advocacy at Columbus Children's Hospital ("Assessment Center"). At the Assessment Center, Marshall interviews sex abuse victims, and a doctor or nurse examines the victims afterward. Marshall does not conduct the interview with other people present with the victim, but the police and prosecutors may watch the interview through closed-circuit television. The police and prosecutors do not control Marshall's interview, and Marshall does not change the way she interviews if the police and prosecutors are watching. Marshall discusses her interview with the doctor or nurse responsible for examining the victim at the Assessment Center. This discussion helps the doctor or nurse with the physical examination. *Page 4 
 {¶ 9} Marshall interviewed D.W. about appellant raping him, and Marshall wrote a report about her interview. The interview was also video recorded, and the trial court allowed appellee to play the video for the jury over appellant's counsel's objection. The video depicted the following. Marshall told D.W. that she was going to ask him questions and that he was going to see a doctor after the questioning. D.W. asked if the doctor was going to give him a shot, and Marshall said that she did not know. D.W. said that the doctor who was going to examine him was not his doctor. Marshall indicated that D.W. was correct, and Marshall told D.W. that the doctor he was going to see was named Dr. Thackeray. D.W. wanted to meet Dr. Thackeray, and Marshall took D.W. out of the interview room to introduce him to the doctor. Afterward, Marshall and D.W. returned to the interview room, and the interview resumed. Initially, when Marshall resumed questioning, D.W. referred to appellant as "fat Geoff," and D.W. told Marshall that "fat Geoff" put his "winkie" in D.W.'s mouth. (Tr. 101.) D.W. said that this took place five times. Marshall showed D.W. an anatomical drawing of a man, and D.W. identified the penis in the drawing as a "winkie." (Tr. 109.) D.W. said that the rape occurred in "daddy Geoff's room." (Tr. 112.) D.W. said that appellant's son, E.A., saw the rape, and D.W. said that "fat Geoff" put his "winkie" in E.A.'s mouth, too. (Tr. 114.) D.W. asked Marshall to tell the doctor what "fat Geoff" did to him, and Marshall said that she would. Marshall also said that the doctor would check D.W.'s mouth.
 {¶ 10} The video ended, and Marshall testified that Dr. Thackeray examined D.W. after the interview. According to Marshall, Dr. Thackeray used information from her interview to examine D.W. *Page 5 
 {¶ 11} On cross-examination, appellant's counsel asked Marshall about the section of her interview report that refers to the victim's competency. The section contains two pre-written statements: (1) "[t]he child is able to understand truth," and (2) "[t]he child is able to understand the consequences of a lie." (Exhibit 18.) The word "[n]o" is specified after each statement. (Exhibit 18.) Marshall testified that the Assessment Center does not use the competency section of the report anymore. Marshall also noted that she did not ask D.W. to define a truth or a lie and did not assess whether D.W. was able to understand the consequences of a lie because D.W. was only four years old when she interviewed him. Marshall also explained that she did not assess D.W.'s knowledge about truth-telling and lying because D.W. spontaneously disclosed the rape at the beginning of the interview, and Marshall did not want to change the course of the conversation.
 {¶ 12} On re-direct examination, Marshall testified that four-year-old children understand that telling the truth is good and that lying is bad, but these children may not be able to give definitions of the truth and a lie. Thus, Assessment Center medical forensic interviewers do not ask four-year-old children questions about truth-telling and lying. Lastly, Marshall reiterated that her role at the Assessment Center is to gather information from sex abuse victims "for purposes of medical diagnosis and treatment" and to give that information to the doctors or nurses who examine the victims. (Tr. 137.)
 {¶ 13} Dr. Thackeray also testified. Dr. Thackeray examines sex abuse victims at the Assessment Center. Dr. Thackeray consults with the medical forensic interviewers before he conducts his physical examination. The medical forensic interview assists Dr. Thackeray in testing, diagnosing, and treating the victims. *Page 6 
 {¶ 14} Dr. Thackeray examined D.W. at the Assessment Center. During the physical examination, Dr. Thackeray took "a history" from D.W. (Tr. 148.) In addition, Dr. Thackeray relied on Marshall's interview with D.W. to determine what tests he needed to perform during the physical examination. On cross-examination, Dr. Thackeray testified that he did not conduct his own interview on the subject of appellant raping D.W.
 {¶ 15} Next, D.W. testified on appellee's behalf over appellant's counsel's objection. D.W. identified appellant as "Geoff." (Tr. 233.) D.W. testified that appellant put his "winkie" in D.W.'s mouth. (Tr. 235.) He said that the rape occurred in the winter at appellant's house and that appellant put his "winkie" in the child's mouth one time. (Tr. 237.) Appellee showed D.W. the anatomical drawing of a man that Marshall previously used, and D.W. identified the penis in the drawing as a "winkie." (Tr. 236.)
 {¶ 16} Grove City Police Detective Rick Steller testified on behalf of appellee that he investigated D.W.'s rape. The detective stated that he once went to appellant's house during the investigation, and a woman at the house gave the detective permission to take photographs inside the house. According to Detective Steller, appellant was not home at the time. On cross-examination, appellant's counsel asked Detective Steller about his investigation. Detective Steller noted that he (1) watched Marshall interview D.W. over closed-circuit television, (2) did investigative work at appellant's house, and (3) sent evidentiary samples to a crime lab for testing. Appellant's counsel then asked, "[a]nd that is the only independent investigation that you conducted, right?" (Tr. 187.) Detective Steller answered, "[y]es. Well, there was one attempt to speak with [appellant] of this incident, but that was declined." (Tr. 187.) *Page 7 
Appellant's counsel then requested a side-bar conference, but the conference was held off the record.
 {¶ 17} Thereafter, appellee submitted into evidence Marshall's interview report. In the competency section of Marshall's interview report, Marshall noted that she did not assess D.W. for his understanding of the truth or a lie because D.W. spontaneously disclosed the rape at the beginning of the interview. In the report's summary section, Marshall stated that D.W.'s rape disclosure "was clear, coherent and consistent." (Exhibit 18.) Additionally, appellee submitted into evidence Dr. Thackeray's medical report. The medical report referred to Marshall's report and D.W.'s rape disclosure. Appellant's counsel objected to the admission of these reports, but the trial court overruled the objection and admitted them.
 {¶ 18} E.A., a five-year-old child, testified on appellant's behalf after the trial court found him competent to testify. E.A. identified appellant as his father, and E.A. called his father "[f]at Geoff." (Tr. 253.) E.A. testified that he never saw appellant put anything in D.W.'s mouth and that appellant never put anything in E.A.'s mouth.
 {¶ 19} Appellant testified on his own behalf that he did not put his penis in D.W.'s mouth. Appellant also testified that Clarinda threatened him when she confronted him about the rape. On cross-examination appellant noted that, after Clarinda confronted him about the rape, she threatened him more than the one time Clarinda mentioned at trial. Appellee asked appellant if he told the police about these threats, including after the police started to investigate the rape. Appellee also asked appellant if he contacted an attorney about Clarinda threatening him. Appellant's counsel objected to these *Page 8 
questions, but the trial court overruled the objections. Appellant answered that he did not inform the police or an attorney about Clarinda's threats.
 {¶ 20} Thereafter, appellant's counsel argued that appellee improperly questioned appellant about whether he spoke with the police during the rape investigation. Appellant's counsel argued that the questions improperly challenged appellant for exercising his right against self-incrimination under the Fifth Amendment to the United States Constitution. Appellant's counsel asked the trial court to instruct the jury to disregard appellee's questions concerning appellant's interaction with the police. The court declined to give the instruction.
 {¶ 21} Appellant's counsel also argued that appellee improperly questioned appellant about whether he spoke with an attorney during the rape investigation. Appellant's counsel claimed that the question improperly challenged appellant for decisions concerning his right to an attorney under the Sixth Amendment to the United States Constitution. Appellant's counsel did not ask for a jury instruction on the question, however.
 {¶ 22} The jury found appellant guilty of rape. Appellant appealed, raising six assignments of error:
 I. The Trial Court erred by admitting the testimony of the minor child, D.W.
 II. The Trial Court erred in admitting into evidence the statements made by the minor child, D.W., to the employees of the Child Assessment Center.
 III. The Trial Court erred in admitting evidence of Defendant's silence prior to trial in violation of Defendant's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Page 9 
 IV. The Trial Court erred in failing to give a corrective or limiting instruction regarding the evidence of Defendant's silence prior to trial.
 V. Defendant's rights under the Sixth Amendment to the United States [C]onstitution were violated due to the ineffectiveness of trial counsel.
 VI. Appellant's rights to due process, a Grand Jury indictment, and to notice of all of the essential elements for which he was charged were violated by the State's failure to include a mens rea element in the indictment.
 {¶ 23} In his first assignment of error, appellant argues that D.W. was not competent to testify. We disagree.
 {¶ 24} Evid. R. 601(A) provides that every person is competent to testify except children under ten years old "who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." The proponent of testimony from a child under ten years old bears the burden of proving that the witness is competent to testify. State v. Clark,71 Ohio St.3d 466, 469, 1994-Ohio-43. A trial court must conduct a hearing to determine whether a child under ten years old is competent to testify.State v. Frazier (1991), 61 Ohio St.3d 247, 250-251. The court must consider whether the child is able to (1) receive accurate impressions of fact or observe acts about which the child will testify, (2) recall those impressions or observations, (3) communicate what was observed, (4) understand truth and falsity, and (5) appreciate the responsibility to be truthful. Id. We will not reverse a trial court's decision on a child's competency to testify absent an abuse of discretion.Clark at 469. An abuse of discretion connotes more than an error of law or judgment; it implies a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. *Page 10 
 {¶ 25} Appellant argues that D.W. was not competent to testify because he could not articulate the definition of a lie. Appellant notes that D.W. could not explain why it is improper to lie and that he instead answered that it is bad to lie "because * * * [p]eople be taking you to college." (Tr. 50-51.) A child need not define a lie to establish competency to testify, however. See State v. Hartman (Dec. 19, 1986), Lake App. No. 11-254; State v. L.M., Cuyahoga App. No. 90322,2008-Ohio-3543, ¶ 15. Likewise, a child's competency to testify does not depend on the child having "ready, intelligent answers to such perplexing questions as `If you tell a lie, what happens to you?'"State v. Kirk (1987), 42 Ohio App.3d 93, 94, citing Harville v.State (Ala.Crim.App. 1980), 386 So.2d 776. Rather, "[t]he crucial inquiry is the morality of speaking truthfully." Id. Here, D.W. demonstrated that he understands truth and falsity and that he appreciates the responsibility to be truthful. Specifically, D.W. verified that he can tell the truth. He said that telling the truth meant not to "lie to people." (Tr. 45.) He also said that it is important to tell the truth and that lying is wrong.
 {¶ 26} Appellant also argues that D.W. was not competent to testify because he initially said that his favorite cartoon character was real. D.W.'s imaginative response did not establish that he was incompetent to testify, however. See State v. Reardon, Tuscarawas App. No. 2001AP080082, 2002-Ohio-2537 (concluding that a child was competent to testify even though the child believed that a cartoon character was real). See, also, State v. Anderson, 154 Ohio App.3d 789,2003-Ohio-5439, ¶ 65 (recognizing that a four-year-old child's claim that she believes in Santa Claus and that she sees monsters did not negate her competency to testify because very young children "generally believe in such things as Santa Claus and the bogeyman and frequently play *Page 11 
make-believe"). Regardless, D.W. ultimately confirmed that his favorite cartoon character was not real.
 {¶ 27} Next, appellant relies on State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, to support his contention that D.W. was not competent to testify. In Jett, the appellate court reversed a trial court's conclusion that a five-year-old sex abuse victim was competent to testify. The appellate court noted that the child only responded "yes" or "no" to the trial court's leading questions during the competency hearing and that the child provided no narrative about the abuse. The appellate court stated that, with the "yes" and "no" questions, "the child has a fifty percent chance of being right simply by guessing." The appellate court also recognized that the child could not "articulate clearly the distinction between telling a lie and telling the truth." The court then acknowledged that, when the child testified at trial, she was "absolutely incorrect about a number of circumstances" about the sex abuse. In particular, the defendant admitted that the sex abuse occurred when he was drying the child with a towel after she had just taken a bath. However, the child testified that she was wearing clothes when the defendant sexually abused her. The child incorrectly testified that she first reported the abuse to her mother, even though it was established that the child first reported the abuse to a psychologist. And, the child incorrectly testified that she did not inform the psychologist about the abuse. According to the court, these problems in the child's testimony "should have been brought out during the voir dire of the victim" to allow the trial court to deem the child incompetent to testify.
 {¶ 28} Appellant also relies on Schulte v. Schulte, 71 Ohio St.3d 41,1994-Ohio-459, to argue that D.W. was not competent to testify. InSchulte, the Supreme Court of *Page 12 
Ohio concluded that a four-year-old child was not competent to testify in a domestic relations action. Id. at 44. The child's mother sought custody due to the child being sexually abused by her father. Id. at 41. At the competency hearing, the child testified about her name and age, and the child named her sister and parents. However, the child was distracted when asked whether she was in pain as a result of her father sexually abusing her. Id. at 44. Likewise, the child answered "`[y]es'" to the trial court's question, "`Did your mommy tell you to come and tell me this today?'" Id. When the trial court asked the child when she and her mother had this conversation, the child answered, "`[n]ever.'" When the trial court asked why the child stated that her mother did not tell her to come to the hearing, the child said, "`[c]ause.'" Id. In concluding that the child was not competent to testify, the Supreme Court of Ohio noted that the child was unable to observe and recall accurate impressions of the facts regarding the abuse. Id. In particular, the court recognized that the child was distracted and incapable of communicating what she observed about the abuse. Id. The court also concluded that the child did not understand truth or falsity and that the child did not appreciate the responsibility to be truthful. Id.
 {¶ 29} Appellant contends that Jett establishes that D.W. was incompetent to testify because D.W. provided incorrect information during the competency hearing. Specifically, appellant notes that, likeJett, D.W. incorrectly stated that the rape occurred in the summer. However, the court in Jett was concerned with the magnitude of the child's incorrect answers, which included the child's damaging claim that she was clothed when the sex abuse occurred, despite evidence to the contrary. Conversely, a child's knowledge of the exact date of when a particular incident occurred is not required *Page 13 
to render the child competent to testify. L.M. at ¶ 15. Likewise, "[o]ther courts have held child witnesses competent to testify even though they answered some questions wrong." Anderson at ¶ 62. Thus, D.W. did not establish that he was incompetent to testify when he was unable to recall the date of the incident.
 {¶ 30} Relying on Schulte, appellant notes that D.W. provided non-responsive answers during the competency hearing. In particular, D.W. non-responsively answered "winter" when the trial court first asked him where the rape occurred. (Tr. 52.) However, this response did not establish that D.W. was incompetent to testify. D.W. corrected this non-responsive answer when he ultimately indicated that the rape occurred at appellant's house. And we have already deemed D.W.'s non-responsive "[p]eople be taking you to college" statement as insignificant.
 {¶ 31} Furthermore, appellant argues that Jett and Schulte establish that D.W. was incompetent to testify because D.W. provided non-narrative "yes" and "no" responses during the competency hearing. In State v.Barker (May 9, 1996), Franklin App. No. 95APA09-1209, however, we held that a child was competent to testify even though the child "did not provide a great deal of detail in answering any of the questions" at the competency hearing. In Barker, the competency hearing consisted of leading questions, and the child provided one-or two-word responses to those questions. We concluded that, while the child "did not provide lengthy detail about anything at all," the child "competently and accurately" answered questions during the hearing, and the child demonstrated his understanding of truth and falsity and his responsibility to tell the truth. Id. *Page 14 
 {¶ 32} Here, we already concluded that D.W. demonstrated his understanding of truth and falsity and of his responsibility to tell the truth. In addition, unlike Jett and Schulte, and similar toBarker, D.W. demonstrated the remaining Frazier factors: the ability to receive accurate factual impressions, recall those impressions, and communicate observations. In particular, at the competency hearing, D.W. was able to state his name, age, birthday, the name of his school and teacher, and his grade in school. See State v. Swartsell, Butler App. No. CA2002-06-151, 2003-Ohio-4450, ¶ 15-16 (concluding that a mentally disabled witness demonstrated his competency to testify, and basing that decision, in part, on the witness providing the court with the names of his school, teacher, and parents, and with his name, age, and birthday). Although the child in Schulte stated her name and age and the names of her sister and parents, the child also was distracted and generally nonsensical. These factors do not exist here. In particular, there is no indication that D.W. was distracted during the competency hearing. D.W. not only provided statistics about himself and his school, he indicated that the rape occurred at appellant's house. While D.W.'s competency hearing involved minimal questioning about the rape, this factor does not mitigate against his competency. Rather, we and the Supreme Court of Ohio have affirmed findings of competency to testify in cases where the competency hearing did not involve any questions about the crime at issue. State v. Nasser, Franklin App. No. 02AP-1112, 2003-Ohio-5947, ¶ 45, citing State v. McNeill, 83 Ohio St.3d 438, 1998-Ohio-293, andState v. Allard (1996), 75 Ohio St.3d 482. Accordingly, we conclude that D.W.'s non-narrative responses did not establish that he was incompetent to testify. *Page 15 
 {¶ 33} For all these reasons, we hold that the trial court did not abuse its discretion in finding D.W. competent to testify. Accordingly, we overrule appellant's first assignment of error.
 {¶ 34} In his second assignment of error, appellant first argues that the trial court erred by admitting into evidence D.W.'s disclosures to Marshall. We disagree.
 {¶ 35} The trial court admitted into evidence D.W.'s statements to Marshall under Evid. R. 803(4), which applies to out-of-court statements made for purposes of medical diagnosis or treatment. We have repeatedly determined that statements made to Assessment Center social workers are admissible under Evid. R. 803(4) if they were made for purposes of medical diagnosis or treatment. State v. Arnold, Franklin App. No. 07AP-789, 2008-Ohio-3471, ¶ 37; State v. D.H., Franklin App. No. 07AP-73, 2007-Ohio-5970, ¶ 37-48; State v. Edinger, Franklin App. No. 05AP-31, 2006-Ohio-1527, ¶ 62-64.
 {¶ 36} Here, Marshall testified that her role at the Assessment Center is to gather information from sex abuse victims "for purposes of medical diagnosis and treatment" and to give that information to the doctor or nurse responsible for examining the victims at the Assessment Center. (Tr. 137.) However, appellant relies on State v. Chappell (1994),97 Ohio App.3d 515, and State v. Woods, Cuyahoga App. No. 82789,2004-Ohio-2700, to assert that Evid. R. 803(4) did not apply to D.W.'s statements to Marshall. In Chappell, an appellate court held that a child rape victim's statements to a county social worker were not admissible under Evid. R. 803(4). Chappell at 534. The social worker did not interview the child for purposes of medical diagnosis or treatment, but to determine if further investigation on the rape was warranted. Id. In Woods, an *Page 16 
appellate court held that a child rape victim's statements to a county children services social worker were not admissible under Evid. R. 803(4). Woods at ¶ 15. The court noted that the social worker coordinated his interview with a police detective "who was either present during the interview or observed the interview." Id. at ¶ 12. The court concluded that the detective's presence transformed the interview into a "subterfuge for the gathering of information, rather than for aiding in the diagnosis or treatment of the victim." Id. at ¶ 15.
 {¶ 37} We have previously found Woods and Chappell distinguishable from a social worker's interview of a sex abuse victim at the Assessment Center. Edinger at ¶ 63. Appellant's case is no different. InWoods and Chappell, the social workers who interviewed the child rape victims were employed by the county. Conversely, the Assessment Center is part of a hospital, and the center employed Marshall to interview abuse victims. In Chappell, the social worker interviewed the child to determine if further investigation was warranted. Id. at 534. Here, Marshall interviewed D.W. to assist Assessment Center medical personnel in the testing, treating, and diagnosing of D.W. Lastly, although, likeWoods, the police watched Marshall's interview, Marshall testified that (1) the police did not control her interview with D.W., (2) she did not interview D.W. with the police in the room, and (3) she did not alter her questions because of the police watching the interview. We have previously recognized that the police are not "`overtly present'" under these circumstances, and the police's ability to watch Assessment Center interviews via closed-circuit television does not preclude application of Evid. R. 803(4). D.H. at ¶ 41, quoting Edinger at ¶ 82. Therefore, we *Page 17 
conclude that Chappell and Woods did not render Evid. R. 803(4) inapplicable to D.W.'s statements to Marshall.
 {¶ 38} Appellant also argues that Evid. R. 803(4) did not apply to D.W.'s statements to Marshall because Dr. Thackeray testified that he took his own "history" from D.W. during the physical examination. (Tr. 148.) We disagree. Dr. Thackeray did not describe what "history" he took. Regardless, Dr. Thackeray testified that he relied on Marshall's interview with D.W. when he examined the child, and Dr. Thackeray testified that he did not conduct his own interview on the subject of appellant raping D.W. Therefore, Dr. Thackeray's testimony did not preclude application of Evid. R. 803(4) to D.W.'s statements to Marshall.
 {¶ 39} We next examine whether D.W.'s disclosures to Marshall were for purposes of medical diagnosis or treatment. See State v. Muttart,116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 47 (stating that the "salient inquiry" under Evid. R. 803[4] is whether a child's statements "were made for purposes of diagnosis and treatment rather than for some other purpose"). Appellant argues that D.W.'s statements were not made for purposes of medical diagnosis or treatment because D.W. told Marshall that the doctor he was going to see at the Assessment Center was not his doctor. This is irrelevant. Although D.W. knew that he was not going to see his regular doctor at the Assessment Center, D.W. understood that he would see a doctor at the center, and he discussed the rape with this knowledge. Specifically, Marshall introduced D.W. to the doctor he would see at the Assessment Center, D.W. asked Marshall if the doctor was going to give him a shot, and D.W. asked Marshall to disclose the rape to the doctor. *Page 18 
 {¶ 40} The Supreme Court of Ohio has identified several factors for a court to consider when determining whether a child's statements are admissible under Evid. R. 803(4). Muttart at ¶ 49. These factors are (1) whether the interviewer questioned the child in a leading or suggestive manner, (2) whether the child had a motive to fabricate, and (3) whether the child understood the need to tell the truth. Id. The court may consider the consistency of the child's declarations. Id. The court may also consider the age of the child, "which might suggest the absence or presence of an ability to fabricate." Id. at ¶ 49, citing Broderick v.King's Way Assembly of God Church (Alaska 1991), 808 P.2d 1211,1219-1220.
 {¶ 41} Here, Marshall did not lead D.W. into disclosing the rape. Rather, D.W. spontaneously revealed the rape. Although Marshall did not formally assess D.W.'s understanding of truth and falsity, she reported that D.W.'s rape disclosure "was clear, coherent and consistent." (Exhibit 18.) In addition, the record does not suggest that D.W. had a motive to fabricate. D.W. is a very young child, and the Supreme Court of Ohio has recognized that a "child's young age and naiveté may * * * be factors in favor of trustworthiness." Muttart at ¶ 49, fn. 6. See, also, State v. Wagner (1986), 30 Ohio App.3d 261, 264 (noting that the tender age of a child is a factor that militates against the possibility that the child has an ulterior motive for making an allegation).
 {¶ 42} For all these reasons, we conclude that D.W.'s disclosures to Marshall were made for purposes of medical diagnosis or treatment. Therefore, we hold that the statements were admissible under Evid. R. 803(4). *Page 19 
 {¶ 43} Next, appellant argues that D.W.'s statements to Marshall and Dr. Thackeray were admitted in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. We disagree.
 {¶ 44} The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment to the United States Constitution. Pointer v. Texas (1965), 380 U.S. 400, 403-406. Under Crawford v. Washington (2004), 541 U.S. 36, a witness's testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted is barred under the Confrontation Clause unless the witness is unavailable and the accused had a prior opportunity to cross-examine the witness.
 {¶ 45} We have previously held that a child's statements to Assessment Center social workers were not testimonial and that Crawford and the Confrontation Clause did not bar admission of the statements.Arnold at ¶ 34; D.H. at ¶ 49-54; Edinger at ¶ 71-82, 86. Regardless, the Confrontation Clause does not bar the admission of out-of-court statements from individuals who testify at trial and are subject to cross-examination at trial. Crawford at 59, fn. 9, citing California v.Green (1970), 399 U.S. 149, 162. Here, D.W. testified at trial, and appellant's counsel cross-examined D.W. Therefore, Crawford and the Confrontation Clause did not bar admission of D.W.'s statements to Marshall and Dr. Thackeray.
 {¶ 46} Similarly, appellant argues that D.W.'s statements to Marshall and Dr. Thackeray were admitted in violation of the Confrontation Clause in Section 10, Article I of the Ohio Constitution, which states: "In any trial, in any court, the party accused shall *Page 20 
be allowed to * * * meet the witnesses face to face." However, the Supreme Court of Ohio has held that the Confrontation Clause in the Ohio Constitution does not bar the admission of out-of-court statements from individuals who testify at trial. State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, ¶ 110. Therefore, the Confrontation Clause in the Ohio Constitution did not bar admission of D.W.'s statements to Marshall and Dr. Thackeray.
 {¶ 47} For these reasons, we conclude that D.W.'s statements to Marshall and Dr. Thackeray were admissible. Accordingly, we overrule appellant's second assignment of error.
 {¶ 48} In his third assignment of error, appellant argues that we must reverse his conviction because of trial references to appellant not talking with police or an attorney before his arrest. We disagree.
 {¶ 49} Appellant first challenges trial references to his pre-arrest invocation of the right against self-incrimination under theFifth Amendment to the United States Constitution. In particular, appellant contends that the trial court erred by allowing Detective Steller to testify during appellee's case-in-chief that "there was one attempt to speak with [appellant] * * * but that was declined." (Tr. 187.) The record does not indicate that appellant's counsel objected to this testimony. Appellant's counsel requested a side-bar conference after this testimony, but the conference was not transcribed. Thus, we do not know the substance of the conference, and we will not infer that, during the conference, appellant's counsel objected to Detective Steller's testimony. Having failed to make a record of an objection, appellant forfeited the Fifth Amendment issue concerning Detective Steller's testimony, and we may only reverse *Page 21 
appellant's conviction if plain error resulted from the detective's reference to appellant's pre-arrest silence. See State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15. See, also, Crim. R. 52(B) (stating that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Plain error exists when there is error, the error is an obvious defect in the trial proceedings, and the error affects substantial rights.State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id.
 {¶ 50} Appellant relies on State v. Leach, 102 Ohio St.3d 135,2004-Ohio-2147, to challenge Detective Steller's testimony. InLeach, a defendant was tried for kidnapping and sex offenses. Id. at ¶ 8. During its case-in-chief, the prosecution elicited a police sergeant's testimony that the defendant declined a pre-arrest interview. Id. at ¶ 5. The prosecution also referred to the defendant's pre-arrest silence during opening statements. Id. at ¶ 4. The Supreme Court of Ohio concluded that the prosecution improperly invited the jury to infer the defendant's guilt from the pre-arrest silence. Id. at ¶ 25. The court concluded that the use of a defendant's pre-arrest silence in the prosecution's case-in-chief as substantive evidence of guilt violates the defendant's right against self-incrimination under theFifth Amendment. Id. at ¶ 30-31.
 {¶ 51} We do not find Leach applicable to Detective Steller's testimony, however. In Leach, the prosecutor mentioned the defendant's pre-arrest silence in her opening statement, the prosecution elicited testimony on the defendant's pre-arrest silence through its own initiative, and the prosecution used the testimony as evidence of the defendant's guilt. Here, Detective Steller testified about appellant's pre-arrest silence in *Page 22 
response to defense counsel's question that implied that the detective's investigation was inadequate. The United States Supreme Court has held that the Fifth Amendment does not prohibit references to a defendant's invocation of the right against self-incrimination when the references are made in "fair response" to the defense's claims. United States v.Robinson (1988), 485 U.S. 25, 32-34. See, also, Commonwealth v.DiNicola (2003), 581 Pa. 550, 562 (applying Robinson, holding that the prosecution did not violate the defendant's Fifth Amendment rights when it elicited the police officer's testimony on the defendant's pre-arrest silence). Thus, we find no error, let alone plain error, under theFifth Amendment for the trial court to allow the testimony.
 {¶ 52} Next, appellant cites to the portion of his cross-examination that involved questions about his pre-arrest silence. Appellant provides no argument to support this issue as App. R. 16(A) requires. We have authority to disregard issues raised in contravention of App. R. 16. See App. R. 12(A)(2); Franklin Cty. Dist. Bd. of Health v. Sturgill (Dec. 14, 1999), Franklin App. No. 99AP-362. Nevertheless, we find noFifth Amendment violation in appellant's cross-examination.
 {¶ 53} In Jenkins v. Anderson (1980), 447 U.S. 231, 238, the United States Supreme Court held that "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." When the defendant testifies, he "cast[s] aside his cloak of silence" and the impeachment "advances the truth-finding function of the criminal trial." Id.
 {¶ 54} Here, appellant testified on cross-examination that Clarinda threatened him multiple times after D.W. disclosed the rape. In contrast, Clarinda testified that she threatened him once after the disclosure. Appellee did not want the jury to believe *Page 23 
appellant over Clarinda, and appellee attacked appellant's credibility through questions about why appellant never mentioned Clarinda's threats to the police despite numerous opportunities during the rape investigation. Pursuant to Jenkins, we conclude that appellee did not violate the Fifth Amendment when it impeached appellant with his pre-arrest silence. Therefore, the trial court did not err under theFifth Amendment by allowing the cross-examination.
 {¶ 55} Lastly, appellant's third assignment of error cites the Sixth
and Fourteenth Amendments to the United States Constitution. Appellant provides no argument concerning whether trial references to appellant's pre-arrest silence violated these constitutional provisions, however. Thus, we need not address these issues. See App. R. 12(A)(2);Sturgill.
 {¶ 56} In summary, we conclude that the trial court did not err by allowing references to appellant's pre-arrest silence. We overrule appellant's third assignment of error.
 {¶ 57} In his fourth assignment of error, appellant argues that we must reverse his conviction because the trial court did not provide jury instructions to address trial references to his pre-arrest silence. We disagree.
 {¶ 58} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." State v. Joy, 74 Ohio St.3d 178, 181, 1995-Ohio-259, citing State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. However, we will not reverse a trial court's decision not to give a requested jury instruction absent an abuse of discretion.State v. Wolons (1989), 44 Ohio St.3d 64, 68. *Page 24 
 {¶ 59} Here, appellant argues that the trial court abused its discretion by declining his counsel's request for a curative instruction that the jury disregard appellee's questions to appellant on cross-examination that concerned appellant not talking to police during the rape investigation. Appellant is incorrect. These questions did not violate appellant's constitutional rights, and the questions served to impeach appellant's credibility in accordance with Jenkins. Therefore, the trial court did not abuse its discretion by refusing to give the requested curative instruction.
 {¶ 60} Alternatively, as to appellee's cross-examination and Detective Steller's testimony, appellant argues that the trial court was required to provide an instruction noting the limited admissibility of the pre-arrest silence references and instructing the jury not to infer guilt from appellant's pre-arrest silence. Appellant's counsel neither requested this instruction nor objected to the trial court not giving the instruction. Generally, a party forfeits error by neither requesting jury instructions nor objecting to the trial court omitting jury instructions. See State v. Jackson, 92 Ohio St.3d 436, 444,2001-Ohio-1266; State v. Cox, Butler App. No. CA2005-12-513,2006-Ohio-6075, ¶ 20; State v. Dover, Stark App. No. 2007-CA-00140,2008-Ohio-1071, ¶ 135; Crim. R. 30. Thus, the plain error standard applies to the forfeited issue. See Payne at ¶ 15; Cox at ¶ 20;Dover at ¶ 135; Crim. R. 52(B). A trial court's failure to give a limiting instruction sua sponte is not plain error, however. State v.Schaim, 65 Ohio St.3d 51, 61, 1992-Ohio-31, fn. 9; State v. Davis (Oct. 24, 2000), Franklin App. No. 00AP-296; State v. Rawls, Franklin App. No. 03AP-41, 2004-Ohio-836, ¶ 23. Evid. R. 105 requires parties to request limiting instructions when evidence is admissible for one purpose, but not another. Thus, under Evid. R. 105, a court is required to give a limiting instruction only if *Page 25 
the instruction is requested. See State v. Curtis, Marion App. No. 9-02-11, 2002-Ohio-5409, ¶ 25; State v. Givens, Columbiana App. No. 07 CO 31, 2008-Ohio-3434, ¶ 84. Therefore, we find no plain error from the trial court's failure to give a limiting instruction on the pre-arrest silence references at trial. Having also concluded that the trial court did not abuse its discretion by failing to give appellant's requested curative instruction, we overrule appellant's fourth assignment of error.
 {¶ 61} In his fifth assignment of error, appellant argues that his trial counsel rendered ineffective assistance. We disagree.
 {¶ 62} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court need not address both Strickland components if the defendant makes an insufficient showing on either one. Id. at 697.
 {¶ 63} A properly licensed attorney is presumed competent. State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 88, citing Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. There is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Bradley (1989), *Page 26 42 Ohio St.3d 136, 142, quoting Strickland at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment.State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104. See, also,State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citingBradley at 144 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness. State v. Burgins (1988),44 Ohio App.3d 158, 160; State v. Burks, Franklin App. No. 07AP-553,2008-Ohio-2463, ¶ 54.
 {¶ 64} Appellant first argues that his counsel was ineffective for eliciting Detective Steller's testimony about his pre-arrest silence. Detective Steller mentioned appellant's pre-arrest silence in response to defense counsel's cross-examination about the rape investigation. A trial counsel's line of questioning on cross-examination is a matter of trial strategy. In re Brooks, Franklin App. No. 04AP-164,2004-Ohio-3887, ¶ 40. Ineffective assistance does not result from reasonable cross-examination that does not elicit a desired response. See State v. Davis (Sept. 5, 1991), Franklin App. No. 91AP-333. Here, appellant's counsel made a reasonable decision to challenge the thoroughness of Detective Steller's rape investigation. Thus, appellant's counsel was not deficient in cross-examining Detective Steller, even though counsel did not elicit a desired response. SeeStrickland at 687; Burgins at 160; Burks at ¶ 54; Brooks at ¶ 40;Davis. Therefore, we conclude that appellant's trial counsel did not render ineffective assistance when he cross-examined Detective Steller.Strickland at 687. *Page 27 
 {¶ 65} Next, appellant generally argues that his trial counsel was ineffective for forfeiting other issues mentioned on appeal. As appellee recognizes, appellant's counsel did not request a limiting instruction about references to appellant's pre-arrest silence, and appellant's counsel did not object to the trial court not providing the instruction. Thus, appellant's counsel forfeited issues concerning the trial court not providing the limiting instruction.
 {¶ 66} The decision not to seek a limiting instruction is a matter of trial strategy. State v. Hester, Franklin App. No. 02AP-401, 2002-Ohio-6966, ¶ 15; Rawls at ¶ 42. Arguably, appellant's trial counsel chose not seek a limiting instruction about references to appellant's pre-arrest silence because, by asking for a curative instruction, counsel believed that the jury needed to completely disregard the pre-arrest silence references. We need not decide whether this decision constituted reasonable trial strategy because we find no reasonable probability that the results of appellant's trial would have differed had appellant's counsel requested the limiting instruction. SeeStrickland at 694. In particular, the trial references to appellant's pre-arrest silence were constitutional. Likewise, the references did not suggest that appellant raped D.W., and, therefore, the jury had no context for using the references to infer appellant's guilt. Accordingly, we conclude that appellant's trial counsel was not ineffective for failing to either request the limiting instruction on references to appellant's pre-arrest silence or object to the trial court not giving the instruction. Id.; State v. West, Cuyahoga App. No. 89229, 2008-Ohio-2190, ¶ 42. Having rejected appellant's arguments that his trial counsel was ineffective, we overrule appellant's fifth assignment of error. *Page 28 
 {¶ 67} In his sixth assignment of error, appellant argues that we must reverse his rape conviction because the indictment was defective. We disagree.
 {¶ 68} In State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, ¶ 1, 19 ("Colon I"), the Supreme Court of Ohio held that a defendant convicted for robbery in violation of R.C. 2911.02(A)(2) could raise for the first time on appeal the issue of the indictment being defective for failing to charge the requisite culpable mental state ("mens rea") of recklessness. The court concluded that structural error, and not plain error, applied because the defect in the indictment led to significant errors throughout the defendant's trial. Colon at ¶ 23. As an example, the court noted that the prosecution invoked the wrong mens rea at trial, and the jury instructions did not indicate the proper mens rea. Id. at ¶ 31. The court reversed the defendant's conviction upon finding structural error in the defendant's indictment. Id. at ¶ 32, 45. The court recognized that the existence of "`structural error mandates a finding of "per se prejudice."'" (Emphasis omitted.) Id. at ¶ 20, quoting State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 9.
 {¶ 69} On reconsideration, the court clarified its decision inColon I. State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749 ("ColonII"). The court stated that the structural-error analysis "is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment." Id. at ¶ 8. According to the court, "[s]eldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id.
 {¶ 70} Here, appellant asserts that the rape indictment against him was defective because it did not state the required mens rea. Appellant contends that both Colon I *Page 29 
and II establish that he may raise the issue for the first time on appeal, even though he did not raise the issue to the trial court. Appellant also argues that, under Colon I and II, the defective indictment is structural error and, therefore, that we must reverse his conviction.
 {¶ 71} R.C. 2907.02(A)(1) governs appellant's rape charge and states:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 (a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
 {¶ 72} The indictment against appellant specifically charged rape under R.C. 2907.02(A)(1)(b), and the indictment alleged that appellant "did engage in sexual conduct" with D.W., a four-year-old child. The indictment did not specify a mens rea pertaining to appellant's awareness of D.W.'s age, and the indictment did not specify a mens rea pertaining to the sexual conduct. Appellant first asserts that strict liability applies to the age element of the rape charge, however. Therefore, appellant concedes *Page 30 
that the indictment was not defective for not specifying a mens rea on appellant's awareness of D.W.'s age, and we agree.
 {¶ 73} Strict liability eliminates the mens rea requirement in certain crimes. State v. Squires (1996), 108 Ohio App.3d 716, 718; Staples v.United States (1994), 511 U.S. 600, 607, fn. 3. See, also, State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 18 (recognizing that the mental state of an offender is part of every criminal offense in Ohio except for those that impose strict liability). Strict liability statutes do not require the defendant to know the facts that make his conduct fit the definition of the offense. Staples at 607, fn. 3. Rather, with strict liability, the prosecution need only prove that the offender engaged in a voluntary act or omission. Squires at 718. An indictment is not defective for failing to specify that strict liability applies. See State v. Peterson, Cuyahoga App. No. 90263, 2008-Ohio-4239, ¶ 14-15; State v. Mason, Lucas App. No. L-06-1404, 2008-Ohio-5034, ¶ 64-65; State v. McGinnis (Nov. 10, 2008), Van Wert App. No. 15-08-07, ¶ 27, 30 (slip copy). See, also, State v. Parker, Cuyahoga App. No. 90256, 2008-Ohio-3681, ¶ 36 (stating that, under Colon I, the mens rea is a necessary element that must be contained in an indictment, except in cases of strict liability offenses).
 {¶ 74} Strict liability applies to statutes that "plainly indicate a purpose to impose it." Lozier at ¶ 21; State v. Maxwell,95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 21; R.C. 2901.21(B). Here, an offender commits rape under R.C. 2907.02(A)(1)(b) when the victim is less than 13 years old "whether or not the offender knows the age of the other person." This provision plainly indicates that strict liability applies to the age element of rape. See State v. Haywood (June 7, 2001), Cuyahoga App. No. 78276; State v. *Page 31 Gillingham, Montgomery App. No. 20671, 2006-Ohio-5758, ¶ 91. Therefore, the indictment against appellant was not defective for failing to specify a mens rea on the age element. See Peterson at ¶ 14-15;Mason at ¶ 64-65; Parker at ¶ 36; McGinnis at ¶ 27, 30.
 {¶ 75} Appellant argues that the indictment was defective for not specifying a mens rea on the sexual conduct element, however. R.C. 2907.02(A)(1) does not express a specific mens rea on the sexual conduct element. Likewise, R.C. 2907.01(A) defines sexual conduct and expresses no applicable mens rea. In State v. Astley (1987), 36 Ohio App.3d 247,249, we analyzed the similarly worded predecessor to the current rape statute. See Astley at 248-249. See, also, Am. Sub. H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1908-1909 (enacting the rape statute under review in Astley). We noted that the statute did not specify a mens rea for sexual conduct with a child under 13 years old, but the statute expressed mens rea for other forms of rape. Astley at 249. Based on this statutory language, we concluded that strict liability applied to the sexual conduct element of raping a child under 13. Id. at 249. InState v. Nicodemus (May 15, 1997), Franklin App. No. 96APA10-1359, we followed Astley to hold that strict liability applies to the sexual conduct element of raping a child under 13 years old pursuant to the current R.C. 2907.02(A)(1)(b).
 {¶ 76} Appellant argues that Lozier overruled Astley andNicodemus. In Lozier, the Supreme Court of Ohio analyzed whether strict liability governed R.C. 2925.03(C)(5)(b), the penalty provision for trafficking LSD. That provision states:
 * * * The penalty for [trafficking in LSD] shall be determined as follows:
 * * * *Page 32 
 (b) * * * [I]f the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in L.S.D. is a felony of the fourth degree * * *.
 {¶ 77} The court recognized that R.C. 2925.01 (BB) states that an offense is committed "`in the vicinity of a juvenile'" if the offense is committed within 100 feet of a juvenile or within the view of a juvenile. Lozier at ¶ 35. The court then noted that R.C. 2925.01(BB) specifies that an offense is committed "`in the vicinity of a juvenile'" regardless of (1) whether the offender knows the age of the juvenile, (2) whether the offender knows the offense is being committed within 100 feet of the juvenile or within the view of the juvenile or (3) whether the juvenile actually views the commission of the offense. Id. The court concluded that R.C. 2925.01 (BB) "employs strict liability terms" and "makes it abundantly clear that the offender's mental state is irrelevant in determining whether the offender has committed an offense `in the vicinity of a juvenile.'" Lozier at ¶ 34, 36.
 {¶ 78} Next, the court analyzed the definition of "in the vicinity of a school" in the version of R.C. 2925.01 (P) in effect at the time of its decision. Lozier at ¶ 37-38. At the time, R.C. 2925.01 (P) "lack[ed] the express strict liability language of R.C. 2925.01 (BB)" and specified no other mens rea. Lozier at ¶ 37-38. See, also, Am. Sub. S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7369 (enacting the version of R.C. 2925.01 [P] under review in Lozier). Instead, the statute simply stated that an offense is "`committed in the vicinity of a school'" if the offender commits the offense on school premises, in a school building or within 1,000 feet of the boundaries of any school premises.Lozier at ¶ 37-38. Compare Am. Sub. H.B. No. 163, 150 Laws of Ohio, Part III, 4620, 4640 (enacting *Page 33 
the current version of R.C. 2925.01 [P] that contains the strict liability language akin to R.C. 2925.01 [BB]).
 {¶ 79} Comparing the two definition sections, the court concluded that "the stark contrast between the definition of `committed in the vicinity of a school' and the definition of `committed within the vicinity of a juvenile' indicates that the General Assembly did not intend to impose strict liability for selling LSD in the `vicinity of a school' section."Lozier at ¶ 39. Therefore because the "in the vicinity of a school" section did not otherwise contain a mens rea, recklessness applied pursuant to R.C. 2901.21(B) ("[w]hen the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense").
 {¶ 80} According to appellant, Lozier establishes that strict liability does not apply to the sexual conduct element to child rape under R.C. 2907.02(A)(1)(b) because the statute explicitly applies strict liability to the age element. Therefore, appellant argues, recklessness is the mens rea for the sexual conduct element, and the indictment against him was defective because it did not specify recklessness as the mens rea for the sexual conduct element.
 {¶ 81} In our view, Lozier does not compel application of a recklessness mens rea to the rape statute, R.C. 2907.02(A)(1). InLozier, the court looked to provisions indicating the General Assembly's intent to treat the two definitions differently. Here, we have no apparent intent to treat the age element and the sexual conduct element differently. *Page 34 
 {¶ 82} Based on the statutory construction of R.C. 2907.02(A)(1), we begin our analysis with State v. Wac (1981), 68 Ohio St.2d 84. InWac, the Supreme Court of Ohio analyzed R.C. 2915.03, which states:
 (A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:
 (1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;
 (2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code.
 {¶ 83} The court recognized the inclusion of recklessness in subsection (2), but the absence of a mens rea in subsection (1).Wac at 87. The court concluded that this statutory construction "`plainly indicates a purpose to impose strict criminal liability'" to subsection (1). Id., quoting R.C. 2901.21(B).
 {¶ 84} The court relied on Wac in Maxwell. In Maxwell, the court analyzed R.C. 2907.321, which states:
 (A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 * * *
 (6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers.
(Emphasis added.)
 {¶ 85} Specifically, the court discussed whether strict liability applied to an offender bringing child pornography into the state of Ohio in violation of R.C. 2907.321(A)(6). Maxwell at ¶ 22-31. The court recognized the inclusion of a knowledge *Page 35 
mens rea in the main provision in R.C. 2907.321(A) and the absence of a mens rea elsewhere in the statute. Id. at ¶ 29-30. The court concluded that this statutory construction plainly indicates that strict liability applies to the act of bringing child pornography into the state of Ohio.Maxwell at ¶ 24-30.
 {¶ 86} Although Lozier subsequently applied a different analysis thanMaxwell and Wac, the Supreme Court of Ohio has recently indicated thatMaxwell and Wac remain good law. See State v. Fairbanks,117 Ohio St.3d 543, 2008-Ohio-1470. In Fairbanks, the court applied Maxwell andWac in determining the mens rea of R.C. 2921.331(C)(5)(a)(ii), a penalty enhancement provision for the offense of failure to comply with an order or signal of a police officer. See Fairbanks at ¶ 14. The court noted that R.C. 2921.331(C)(5)(a)(ii) does not specify a mens rea, but R.C. 2921.331(B), which establishes the failure to comply offense, "specifies the degree of culpability as willful." Fairbanks at ¶ 14. Relying onMaxwell and Wac, the court concluded that strict liability applies to R.C. 2921.331(C)(5)(a)(ii) because paragraph (B) of the statute specifies a "willful" mens rea, but subsection (C)(5)(a)(ii) specifies no mens rea. Fairbanks at ¶ 14.
 {¶ 87} Finally, we note that the Supreme Court of Ohio recently distinguished Maxwell and applied Lozier in applying a recklessness mens rea to R.C. 2923.13(A)(3) (having a firearm while under indictment).State v. Clay, Slip Opinion No. 2008-Ohio-6325. Nevertheless, we conclude that Maxwell is applicable here, given the statutory construction at issue and the "strong stance against sex-related acts involving minors, as evidenced by the numerous statutes in the Ohio Revised Code providing for criminal liability for those acts."Maxwell at ¶ 30. *Page 36 
 {¶ 88} Here, considering rape under R.C. 2907.02(A)(1) in its entirety, we note that the statute includes a purposely mens rea in subsection (a) and a knowingly mens rea in subsection (c), but the statute states no mens rea on the sexual conduct element in the main provision. Thus, the statutory construction of R.C. 2907.02(A)(1) plainly indicates that strict liability applies to the sexual conduct element of the statute, which encompasses child rape in subsection (b). Because strict liability applies to the sexual conduct element of rape under R.C. 2907.02(A)(1)(b), the indictment against appellant was not defective for failing to specify a mens rea on that element. SeePeterson at ¶ 14-15; Mason at ¶ 64-65; Parker at ¶ 36; McGinnis
at ¶ 27, 30.
 {¶ 89} Accordingly, we need not reverse appellant's conviction underColon I and II. We overrule appellant's sixth assignment of error.
 {¶ 90} In summary, we overrule appellant's assignments of error. Thus, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and SADLER, JJ., concur. *Page 1