JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Oris Parker ("defendant"), challenges his three convictions for felonious assault, two convictions for domestic violence, and two convictions for kidnapping as being against the weight of the evidence and not supported by sufficient evidence. For the reasons that follow, we affirm.
 {¶ 2} At times, including April 2007, defendant resided with his girlfriend, (referred to in this opinion as "Guthrie"), and the victim, (referred to in this opinion as "Wagner"), in a single-family home located in Cleveland, Ohio. The home was owned by Guthrie's family. Wagner and defendant had a child together, who also resided at the Cleveland property. Defendant and Wagner's affair was unknown to Guthrie until after their baby was born.
 {¶ 3} Wagner testified at trial as follows: On April 11, 2007, Wagner and Guthrie were fighting all day about defendant's relationship with each of them. That evening, Wagner began throwing stuff out and telling defendant she was leaving because she no longer wanted to be with him. This caused defendant to become angry and he started punching Wagner in the face and head and telling her he was going to kill her. During this attack, Wagner was two weeks pregnant with her second child. Defendant allowed her to return to the bedroom she shared with their baby. Then, defendant started hitting her again in the presence of their child, who was lying next to her. Defendant told Guthrie to get the baby because he was going to kill Wagner that night, who was by then bloody and weak. Guthrie took the baby, whose clothes were spattered with her mother's blood. The violence subsided the morning of April 12, 2007, when the victim was given some water to clean up. *Page 4 
According to Wagner, defendant refused her requests to be taken to the hospital. Wagner identified the belt that defendant used to hit her. She also identified articles of clothing that she and her child were wearing on that night. She identified an infant undershirt spattered with blood as belonging to her child and the shirt she had been wearing, which was also covered in blood.
 {¶ 4} Wagner fell asleep and awoke the next morning to pounding and hammering sounds. The back door was shut, the side door was boarded up, and the front door was barricaded with furniture. She was unable to get out but did not call the police for fear that defendant would kill her. However, when she asked defendant to take her to the hospital, he complied. Defendant told people Wagner was jumped by a gang of girls. Wagner said she told this same story to hospital personnel. She said this because she loved the defendant but "most of all, it was fear."
 {¶ 5} At the hospital, the doctor glued her eye shut. She and the defendant left the hospital and went to the store and a movie and then returned home. On this night, Wagner said defendant started swinging a machete and told her he would chop her into 16 pieces to where the police would never know who she was. According to Wagner, the machete was about a foot away from her. At trial, Wagner identified the machete that defendant had swung at her on April 13, 2007. When defendant went to retrieve a belt, Wagner says she pulled a board away from the door and ran away. As she was leaving, she saw a message written on the wall that said "You can't get away." *Page 5 
 {¶ 6} Wagner called police from a neighbor's house. She described herself as "terrified" and "upset."
 {¶ 7} Wagner identified various photographs at trial including the doors that were barricaded shut, and pictures depicting injuries to her face and body. She testified that she lied to medical professionals about how she incurred her injuries.
 {¶ 8} A neighbor at the time of the incident testified that around April 13, 2007, he observed defendant piling up snow and boarding stuff up around his front porch and across the sidewalk to prevent entry. Defendant also had blocked the windows in his home. Around that time, Wagner came to his home "pretty beat up" with black eyes, bleeding, and hysterical. This witness stated that the victim had "been missing for three days." He let her in and they called the police. The victim stayed at his house that night. This witness described that there were butter knives and nails in the rear door of defendant's home and debris thrown in front of it. There were no unobstructed doors in the area. He also observed writing on the wall and on the mirror in the victim's room; something to the effect of "You'll never escape or you'll never leave."
 {¶ 9} Officer Smith also testified to his involvement in this case. The victim came out screaming hysterically and crying. He noticed redness around her neck and face. It was difficult to enter defendant's residence due to furniture in front of the door. He noticed that the back door was all sealed up with items propped up against it. The victim gave him the machete. *Page 6 
 {¶ 10} The investigating detective testified that he obtained the belt from the residence and put it into evidence.
 {¶ 11} The court denied defendant's motion for acquittal.
 {¶ 12} The defense presented the testimony of Guthrie. She was dating defendant and met Wagner. When Wagner needed a place to stay, Guthrie told her she could move in her home. Wagner lived there for about a year. Guthrie claimed Wagner attacked her. Guthrie said that Wagner was on medication for mental disorders and that she had gone off her medications. On April 12, 2007, Wagner told her that girls had beaten her up. The next day, Wagner went with defendant to the hospital. Guthrie denied that there were any barricades in the house. She denied that any boards were nailed to the doors or that any exits were blocked. She denied that there was any furniture in front of the doors. She explained that the side door was blocked because the lock was not working. Guthrie further explained that the writing on the walls was "a little prank [her] son and [her] daughter played on [the victim]. They went in there and they put silly string all over the house and then wrote a bunch of stuff on the walls." Guthrie denied ever seeing defendant hit Wagner. Guthrie maintained that Wagner attacked the defendant and "she's always doing that to him." Guthrie did not see any blood on Wagner's clothing.
 {¶ 13} Wagner was called on rebuttal. She testified that Guthrie cleaned up the blood that was on the stairwell, attic door, bedroom door, bedroom wall, and the bedroom mirror. Wagner testified that Guthrie saw defendant hitting her. *Page 7 
 {¶ 14} The jury was instructed and returned guilty verdicts on all counts. Defendant was sentenced and commenced this appeal raising two assignments of error for our review.
 {¶ 15} "I. The trial court erred in denying appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction."
 {¶ 16} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 17} Defendant generally maintains that there is no evidence to support any of the convictions against him.
 {¶ 18} Defendant was found guilty of three counts of felonious assault in violation of R.C. 2903.11, two counts of domestic violence in violation of R.C. 2919.25, and two counts of kidnapping in violation of R.C. 2905.01.
 {¶ 19} R.C. 2903.11 provides:
 {¶ 20} "(A) No person shall knowingly do either of the following:
 {¶ 21} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 22} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." *Page 8 
 {¶ 23} Count one alleged that defendant knowingly caused serious physical harm to Wagner; count two charged defendant with causing or attempting to cause physical harm to Wagner by means of a deadly weapon, to-wit: a belt; count six charged defendant with attempt to cause physical harm to Wagner by means of a deadly weapon, to-wit: a machete.
 {¶ 24} There is evidence that would support defendant's conviction on each of these counts, specifically the testimony of Wagner, Officer Smith, and the neighbor, along with physical evidence consisting of a belt and a machete.
 {¶ 25} R.C. 2919.25 provides:
 {¶ 26} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 27} Here, defendant was charged with two counts of unlawfully knowingly causing or attempting to cause physical harm to Wagner, a family or household member. Evidence in the record would support defendant's convictions on each of these counts, specifically the evidence set forth above coupled with the victim's testimony that she resided with defendant and had a child with defendant.
 {¶ 28} R.C. 2905.01 provides:
 {¶ 29} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 30} "* * * *Page 9 
 {¶ 31} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 32} "(3) To terrorize, or to inflict serious physical harm on the victim or another;"
 {¶ 33} In counts four and five, defendant was charged with unlawfully and by force, threat, or deception removing Wagner from the place where she was found or restraining her of her liberty for the purpose of facilitating the commission of a felony or the flight thereafter and/or terrorizing or inflicting serious physical harm on her.
 {¶ 34} There is sufficient evidence to submit these counts to the jury for consideration. Wagner testified that after defendant assaulted her, he proceeded to barricade the front door and board the doors of the residence shut. That morning Wagner's bedroom walls displayed graffiti that said "you'll never leave or you'll never escape." Wagner said she was unable to leave the residence. A neighbor testified that defendant piled snow in front of the house and put plywood across the windows and doors of the residence. Officer Smith also noticed that the doors were sealed shut.
 {¶ 35} At oral argument, defense counsel argued that the Ohio Supreme Court's recent decision in State v. Colon, 2008-Ohio-1624, further compels the dismissal of the kidnapping counts. He argues that his indictment for kidnapping lacked a necessary element to charge him with a crime, specifically the culpable mental state.
 {¶ 36} In Colon, the court held that except in cases of strict liability offenses, the culpable mental state is a necessary element that must be contained in the indictment in order to charge a crime. Failure to do so results in a structural defect that is not waived by a *Page 10 
defendant's failure to raise it. Stated differently, failure to charge an offense may be raised at any time during the pendency of the proceeding. Id. at ¶ 5.
 {¶ 37} Specifically, in Colon, the court examined an indictment based on the robbery statute, R.C. 2911.02(A)(2), which is silent as to a culpable mental state. The court determined that the "catchall culpable mental state" of recklessness applied and was a vital and material element of the offense, which could not be omitted from the indictment. Id. ¶¶ 12-17. This vital element was absent from Colon's indictment for robbery under subsection (A)(2) of the statute and the trial court never instructed the jury on recklessness, which is the culpable mental state necessary to commit robbery.
 {¶ 38} Unlike R.C. 2911.02(A)(2), which does not specify a culpable mental state, R.C. 2905.01 does specify a culpable mental state, which is purpose. R.C. 2905.01(A); see, also, State v. Maurer (1984),15 Ohio St.3d 239, 270, emphasis in original, (holding that "[k]idnapping involves a purposeful removal or restraint, R.C. 2905.01" in terms of an offender's culpable mental state).
 {¶ 39} In this case, the kidnapping charges of the indictment alleged that defendant acted purposefully. Further, when instructing the jury on the elements of kidnapping the court noted that defendant's purpose was a necessary element of the offense. The court went on to define "purpose" and "purposely" to the jury in great detail. Accordingly,Colon is not applicable to the kidnapping charges in this case, which contained the culpable mental state of the crime. *Page 11 
 {¶ 40} The trial court did not err by denying defendant's motion for acquittal under Crim. R. 29.
 {¶ 41} Assignment of Error I is overruled.
 {¶ 42} "II. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 43} A reviewing court may find a verdict to be against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. To warrant reversal of a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.
 {¶ 44} Again, defendant makes a generalized argument that there is no evidence to show or prove that he committed these acts. He claims there is nothing to tie him to any attack, beating, or kidnapping. However, the victim repeatedly testified to these facts and her injuries were observed and corroborated by the neighbor and police as was the fact that the home was barricaded. Although defendant relies on the testimony of Guthrie claiming to have never seen defendant hit the victim, this evidence contradicts Wagner's testimony.
 {¶ 45} A review of the record evidence establishes that defendant's convictions were not against the manifest weight of the evidence.
 {¶ 46} Assignment of Error II is overruled.
 Judgment affirmed. *Page 12 
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and MARY J. BOYLE, J., CONCUR *Page 1