{¶ 1} Defendant-appellant, Savon C. Davis, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of (1) aggravated burglary, aggravated robbery, kidnapping, and felonious assault, each with a firearm specification, (2) carrying a concealed weapon, (3) two counts of having a weapon while under disability, each with a firearm specification, and (4) the four repeat violent offender specifications attached to the aggravated burglary, aggravated robbery, kidnapping, and *Page 2 
felonious assault allegations of the indictment. Because (1) defendant suffered no prejudice in the trial court's decision to allow the state to present evidence not disclosed in pretrial discovery, and (2)State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), does not render defendant's convictions deficient, we affirm.
I. Facts {¶ 2} Through an eight-count indictment filed on June 5, 2007, defendant was charged with each of the offenses for which he ultimately was convicted, as well as one count of improperly handling a firearm in a motor vehicle with an accompanying firearm specification. The charges arose out of a May 23, 2007 home invasion at 3065 Dresden Street and a May 25, 2007 incident at the Knotty Pine Bar.
 {¶ 3} According to the state's evidence, Cali Jo Wider, then 17 years old, lived at 3065 Dresden Street with her mother, her mother's boyfriend and her brother. On the morning of May 23, 2007, she awakened and prepared herself for school, but because she had a few minutes, she lay down to watch television in her bedroom. She fell asleep and did not go to school. Around 10:00 a.m. she awoke to the sound of gunshots in her house. Someone pulled her to the living room, put her on her knees face down on the floor and placed a gun to the back of her head. The person, whom she later identified as defendant, was yelling at her and asking her where the "weed" was. (Tr. 59.)
 {¶ 4} She then saw her dog limping and believed defendant had shot the dog. She began crying when defendant asked if she was unaware that he had a gun, and she told defendant to check her brother's room for the marijuana. One of defendant's accomplices went into the room, ransacked it, and returned, stating the marijuana was not there. Cali then suggested they check the attic, and she led them upstairs. *Page 3 
 {¶ 5} As they proceeded up the stairs toward the attic, they encountered crawl spaces on either side. Knowing her brother kept the marijuana in a duffle bag, she pulled the bag out of the crawl space and gave it to defendant and his accomplice. After looking for more marijuana and not finding it, defendant hit her ear with his gun and asked her where it was. She informed him the duffle bag held all of it. She then was instructed to turn around and not look at them. When she heard defendant and his accomplices leave through the front door, she looked out the window to see three men running.
 {¶ 6} While defendant was engaged with Cali, Cali's mother was in her bedroom in the basement. She awoke to the sound of gunshots and ran to the steps as two of their four dogs came down the stairs, both shot. Seeing a man at the top of the stairs who was pointing a gun at her daughter's bedroom, she went to retrieve her phone but realized she left it upstairs. She started for her gun but feared that taking it out of its storage container would cause the intruders to notice her. Hearing people go up the stairs toward the attic, she thought she might be able to retrieve the gun, but soon realized they were coming back down the stairs. After the intruders ran out of the house, a 9-1-1 call was placed and police came to the scene and investigated.
 {¶ 7} Two days later, on May 25, 2007, Sergeant Richard Ketchem of the Columbus Division of Police was working the Summer Safety Initiative with six officers. They went to the Knotty Pine Bar, where they had experienced prior problems with drugs and violence, to see if they recognized anyone from prior arrests or past activity. As they were getting out of their cruisers to chat with people standing in the parking lot, Ketchem observed two people in a full-sized SUV. He could smell the odor of burnt marijuana coming from the vehicle. *Page 4 
 {¶ 8} As he approached, Ketchem realized the driver's window was down, and he asked the driver to step out of the vehicle. The driver, later identified as defendant, said he had marijuana in his pocket. After defendant was secured and put into a cruiser, Ketchem searched the vehicle for more contraband and found a pistol under the driver's seat. The license plate of the vehicle was MISGWEN; a LEADS check showed Gwendolyn Davis was the registered owner of the vehicle. Davis came out of the Knotty Pine Bar, identified herself, and presented a driver's license to verify her identification.
 {¶ 9} At trial, Cali identified defendant from a photo array compiled following defendant's apprehension at the Knotty Pine Bar. In looking at the photo array, she identified defendant with 99 percent certainty, and then identified him as the perpetrator during the court of the trial. Cali further testified the gun retrieved from the SUV resembled the one defendant used to strike her ear during the home invasion. The gun was not found in the cargo department of the SUV but directly under the driver's seat that defendant occupied.
 {¶ 10} Mark Hardy, a forensic scientist with the Columbus Division of Police, testified at trial to testing the gun to determine if it was operable. Concluding that it was, Hardy compared the projectiles from the test firing with the casings and bullet fragments retrieved from the site of the home invasion and from one of the dogs that was shot. He concluded the two bullet fragments that he examined were fired from the weapon introduced into evidence and shown to Cali at trial.
 {¶ 11} In examining the casings, Hardy noted the extractor markings matched, but the casings lacked marks that would demonstrate a live round of ammunition was definitely fired. As a result, though Hardy could testify the casings at some point were in *Page 5 
the gun and extracted from it, he could not say whether they were removed before firing. In the end, however, his testimony linked all five casings and two bullet fragments to the gun found under the seat defendant occupied in the SUV.
 {¶ 12} Defendant submitted an alibi witness, but the witness was unable to account for defendant during the time of the offense. Although the evidence indicated the home invasion occurred shortly before 10:00 a.m., the alibi witness, Richard A. Eppich, could speak only to defendant's presence at 10:30 a.m. He admitted he was not sure where defendant was at 10:00 a.m.
 {¶ 13} As a result of the evidence presented, the jury convicted defendant of five of the six charges presented for their consideration, along with the accompanying specifications. Following a bench trial finding defendant guilty of the weapons under disability charges with specifications, as well as the repeat violent offender specifications accompanying the first four counts of the indictment, the trial court sentenced defendant to a total of 28 years of imprisonment. Defendant appeals, assigning two errors:
 Assignment of Error No. 1: The trial court erred in allowing the State to introduce into evidence jail records that were produced in the middle of trial, thereby violating Crim. R. 16 and depriving Appellant of his rights as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 Assignment of Error No. 2: The trial court erred in convicting and sentencing Appellant for aggravated burglary, aggravated robbery, and kidnapping, as the indictment for those counts failed to set forth essential elements of the offenses as required by State v. Colon (2008), 118 Ohio St.3d 26. This was structural error and deprived Appellant of his right to a fair trial and notice of the charges against him as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution. *Page 6 
II. First Assignment of Error {¶ 14} Defendant's first assignment of error asserts the trial court erred in allowing the state to utilize a witness and introduce documentary evidence the state failed to disclose until midway through defendant's trial.
 {¶ 15} Prior to trial, the trial court conducted a conference with the parties to discuss two matters. The first was defendant's motion to try the charges arising out of the May 23, 2007 home invasion separately from those arising from the May 25, 2007 incident at the Knotty Pine Bar. In the context of explaining why the two incidents should not be tried together, defense counsel stated that "[t]he gun found May 25th cannot, does not go to identification. You cannot — and they cannot submit any evidence that shows that the mere finding of a gun in a car identifies — and we're talking about a car that they can't even prove he owned, not a car — a vehicle registered to this person. You cannot identify a person from that gun." (Tr. 10.)
 {¶ 16} The second issue involved defendant's alibi evidence. The state argued defendant should be precluded from submitting alibi witnesses because his notice of alibi was filed outside the time parameters of Crim. R. 12.1. The trial court refused to sever trial of the two incidents; it allowed defendant to proceed with his alibi witness.
 {¶ 17} During the course of the trial, the state called Sergeant Ketchem to testify regarding the May 25, 2007 incident at the Knotty Pine Bar. In the course of cross-examining Ketchem, defendant asked, "And at some point in time did you verify whether [defendant] owned that vehicle or not?" Ketchem replied that he did not, but believed one of the other officers "ran the tag information on the car." (Tr. 241.) The state then called Officer Fredrick Hannah, of the Columbus Division of Police, who also was on the *Page 7 
Summer Task Force with Ketchem. Hannah testified the LEADS search showed Gwendolyn Davis was the registered owner of the SUV.
 {¶ 18} After excusing the officer, the court inquired of the prosecution whether it had "another witness for us." (Tr. 265.) The prosecution responded by asking, "Can we break for the day?" (Tr. 265.) When the court inquired whether the prosecution had "one ready to go," the prosecution replied, "Not really." (Tr. 265.) With that, the court stated, "All right. Then we'll break for the day." (Tr. 265-66.)
 {¶ 19} The next day the prosecution began by informing the trial court it had "provided the defense this morning with an additional piece of evidence for discovery, an additional name of a witness," Margie Buechner, who was "the keeper of the record for the Franklin County jail." (Tr. 272.) The prosecution pointed out that "[t]he records we provided to the defense were the visitation records for [defendant] since his arrest back on May 26th of last year." (Tr. 272.) As the prosecution explained, "[T]he testimony yesterday established that Gwendolyn Davis was in fact the owner of the car. It is necessary for the state to establish the relationship between the defendant and Gwendolyn Davis." (Tr. 272.) To that end, the prosecution noted the newly disclosed evidence revealed that Davis made "numerous visits to the jail in which she either describes herself as either the wife and/or fiancée of the defendant, including visits starting on May 27." (Tr. 272.)
 {¶ 20} Defendant objected, asserting the records were irrelevant to the case. Defense counsel explained that "[i]f they need to establish a relationship between Gwendolyn Davis and my client, they can easily call Gwendolyn Davis, who is on the witness list, who we did have notice of." (Tr. 273.) Moreover, defense counsel contended, *Page 8 
using the records was a "back-door way of telling the jury that my client is incarcerated." (Tr. 273.) After hearing comments from both the prosecution and defense counsel, the trial court determined the records would be admitted provided they did not indicate defendant's incarceration at the time of trial. The trial court thus suggested the records be modified to reflect incarceration only through January 2008.
 {¶ 21} After eliciting the testimony of two additional officers, the prosecution called Buechner as a witness. She brought with her records from May 27, 2007 through June 24, 2007 that revealed Davis visited defendant during that time period. According to the records, Davis signed in as his wife at the initial visit and in subsequent visits.
 {¶ 22} Crim. R. 16(A) states that "[u]pon written request each party shall forthwith provide the discovery herein allowed." Crim. R. 16(B)(1)(c) provides that "[u]pon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy" the listed documents, including those that "are intended for use by the prosecuting attorney as evidence at the trial[.]" Similarly, Crim. R. 16(B)(1)(e) states that, on defendant's motion "the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial[.]"
 {¶ 23} While Crim. R. 16(D) notes the continuing duty to disclose, Crim. R. 16(E)(3) sets forth the various remedies if a party fails to comply with the discovery provisions of the rule. In those circumstances, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." *Page 9 
 {¶ 24} Here, the parties do not dispute that defendant requested discoverable material. Nor do the parties dispute that Buechner's name and the documents submitted through her testimony were subject to Crim. R. 16. The issue is whether the trial court appropriately resolved the prosecution's failure to provide defendant pretrial notice of the witnesses and documents as required under Crim. R. 16(B).
 {¶ 25} "It is readily apparent that under this rule, the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a parties' nondisclosure of discoverable material." State v. Parson (1983), 6 Ohio St.3d 442, 445. While "[t]he court is not bound to exclude such material at trial * * * it may do so at its option." Id. On the other hand, "the court may order the noncomplying party to disclose the material, grant a continuance in the case or make such other order as it deems just under the circumstances." Id. Our review "is limited to a determination of whether the trial court's action in this case constituted an abuse of discretion." Id. Within those parameters, "prosecutorial violations of Crim. R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v. Jackson,107 Ohio St.3d 53, 2005-Ohio-5981, at ¶ 131. See also Parson, supra (finding no abuse of discretion in admitting untimely disclosed evidence where none of the three elements was present).
 {¶ 26} The parties initially dispute whether all three elements must be present before reversible error is found. Defendant relies onParson to suggest that the presence of any one of the three elements supports a finding of reversible error. In responding, the *Page 10 
state cites Jackson for the proposition that all three must be present before the court commits reversible error in permitting introduction of untimely disclosed evidence.
 {¶ 27} As between the two cases, Jackson, which cites toParson without purporting to modify or overrule it, sets forth the three elements in the conjunctive. Parson, on the other hand, only states that where none of the three elements is found, no reversible error occurred. As a result, Parson does not address whether the presence of one or more of the three elements is sufficient in the absence of all three. BecauseParson does not specifically address the issue, and Jackson, the more recent case, sets forth the three elements in the conjunctive, we examine whether all three elements are present.
 {¶ 28} The first element asks whether the prosecution's failure to disclose was willful. The issue of car ownership arose during pretrial matters when defendant partially disclosed the defense strategy in asserting the prosecution could not prove defendant owned the vehicle he occupied and in which the gun was discovered. Perhaps alerted at that point to the opportunity for additional evidence, the prosecution apparently procured the evidence at issue during the first day of trial and presented it at the beginning of the next day when it advised the court and defendant of the additional witness and documents not disclosed in discovery.
 {¶ 29} If "willfulness" denotes a decision to withhold evidence known to be discoverable, the prosecution's failure to disclose here was not willful. Instead, the prosecution appears not to have anticipated the issue at which the belatedly disclosed evidence was directed and thus had no evidence to withhold. We, however, need not *Page 11 
resolve whether the prosecution's failure to anticipate and disclose amounts to willfulness, as the second prong of the test is not met here.
 {¶ 30} Similarly, the third element arguably is absent. Defendant contends the documents were prejudicial because they reflected his incarceration. Noting he was permitted to dress in other than jail attire in the presence of the jury, defendant argued that allowing the jury to know of his incarceration negated the purpose of putting defendant in street clothes for the trial.
 {¶ 31} Had the trial court admitted the documents that reflected defendant's incarceration as of the trial date, defendant's contentions would be more persuasive. Had the trial court even allowed the documents reflecting defendant's incarceration through the month before the trial, defendant's contentions would have more weight. The state, however, limited the documents to the month following defendant's apprehension at Knotty Pine Bar, and those documents reflect defendant's confinement for less than one month. The state's deletions arguably rectified any prejudice accruing from the documents, apart from that inherent in the nature of the evidence. Even if they did not, defendant's failure to satisfy the second prong of the Jackson test renders the trial court's decision to admit the evidence within the trial court's discretion.
 {¶ 32} The dispositive element here, the second element, inquires whether disclosure of the information prior to trial would have aided the accused's defense. We are unable to discern any benefit to defendant in having knowledge prior to trial of the state's intent to use jail records to establish the relationship between defendant and the owner of the SUV. Indeed, defendant did not suggest a continuance at trial when the state disclosed its intention to use the additional evidence. Nor does defendant set forth *Page 12 
any benefit to have been gained through prior knowledge of the state's additional evidence. Because defendant cannot meet the second element ofJackson, the trial court did not commit reversible error in admitting the testimony and documents at issue.
 {¶ 33} Defendant's first assignment of error is overruled.
III. Second Assignment of Error {¶ 34} Relying on Colon I, defendant's second assignment of error contends the indictment was fatally deficient in failing to include the mental element for aggravated robbery under R.C. 2911.01. In ColonI, "the Supreme Court of Ohio held that a defendant convicted for robbery in violation of R.C. 2911.02(A)(2) could raise for the first time on appeal the issue of the indictment being defective for failing to charge the requisite culpable mental state (`mens rea') of recklessness." State v. Ferguson, 10th Dist. No. 07AP-999,2008-Ohio-6677, at ¶ 68. "The court concluded that structural error, and not plain error, applied because the defect in the indictment led to significant errors throughout the defendant's trial." Id., citingColon I, at ¶ 23.
 {¶ 35} Initially, to the extent defendant contends that at least some of the counts in the indictment require that the indicted charge state the mental element for the predicate offense, the Supreme Court of Ohio held to the contrary in State v. Buehner, 110 Ohio St.3d 403,2006-Ohio-4707. Defendant's contention that Colon I controls his aggravated robbery conviction is unpersuasive under this court's prior decisions. The language of the indictment charged defendant with aggravated robbery in violation of R.C. 2911.01(A)(1) in that defendant, "in attempting or committing a theft offense" under R.C. 2913.01 "or in fleeing immediately after the attempt or offense" had "a deadly weapon * * * on or about his person or under his control" that "he * * * did display * * * did brandish * * * and/or * * * *Page 13 
did possess." Colon I does not apply to aggravated robbery under R.C. 2911.01(A)(1). State v. Ferguson, 10th Dist. No. 07AP-640,2008-Ohio-3827, at ¶ 50 (concluding the holding in Colon I is "inapplicable to appellant's conviction for aggravated robbery under R.C. 2911.01(A)(1)"). Similarly, although defendant challenges his conviction for aggravated burglary on the basis of Colon I, this court held Colon I does not apply to aggravated burglary. State v. Moore, 10th Dist. No. 07AP-914, 2008-Ohio-4546.
 {¶ 36} Lastly, defendant contends Colon I requires reversal of his kidnapping conviction. The statute governing kidnapping, however, includes a mental element, and the mental element was set forth in the indictment: defendant was charged with restraining Cali with the purpose to facilitate the commission of a felony. As a result, Colon I does not apply to defendant's kidnapping conviction. State v. Carver, 2d Dist. No. 21328, 2008-Ohio-4631; State v. Parker, 8th Dist. No. 90256,2008-Ohio-3681 (concluding R.C. 2905.01 includes the mental element of purpose). Accordingly, defendant's second assignment of error is overruled.
 {¶ 37} Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
KLATT and SADLER, JJ., concur. *Page 1